CYRUS NICKERSON & others *vs.* JESSE TIRRELL.

Suffolk.    March 27. — July 29, 1879.    AMES & LORD, JJ., absent.

The owner or occupant of a dock is liable to a person, who, by his invitation ex
press or implied, and in the exercise of due care, places a vessel in the dock
for an injury caused to the vessel by any defect in the dock or by its unsafe
condition, which the owner or occupant negligently causes or permits to exist,
and the existence of which he knows, or ought, in the exercise of ordinary care,
to know.

In an action by the owner of a vessel, which was broader on its bottom than many
vessels of its size and class, against the owner of a dock, for injuries occasioned
to the vessel by taking ground in a berth that was too narrow for her, there
was evidence that the owner of the wharf directed the master where to place
the vessel, and, on the master asking if it was a proper place to lay the vessel,
replied that it was all right, there was no trouble about the dock. *Held,* that
the defendant was not entitled to have the jury instructed that, if the master
placed his vessel there without previous examination or measurement, the
defendant was not responsible.

TORT for injuries received by the plaintiffs' schooner while
lying in the defendant's dock. Trial in the Superior Court,
before *Pitman,* J., who allowed a bill of exceptions in substance
as follows :

There was evidence tending to show that the defendant's dock,
which was about sixty feet wide, had been in use since 1845,
since which time many vessels had discharged there, both larger
and smaller than the plaintiffs', and no vessel had ever received
damage there before or since, although nothing had been done
to the dock since this vessel was there; that the dock had a
bottom of clay covered with mud of varying depth, which was
soft and easily displaced by vessels lying on it; that vessels lying
at the wharf rested on the ground at low water, and in so resting
forced up the mud on each side, thus forming a berth or keel
track next to the wharf; that the two ridges of mud thus thrown
up, one next the wharf and one near the middle of the dock,
were, at their highest points, from two to four feet higher than
the bottom of the keel track; that the elevations and locations
of the mud varied in position according to the size of the vessel
that last occupied the berth; that the mere facts that a vessel,
when placed at the wharf in this dock, had to lie aground at low
water, and to rest in such a berth or keel track, formed in the

mud by other vessels preceding her, did not of themselves render the dock unsafe or defective; that the same facts were true of many other wharves and docks in Boston, and the master of the plaintiffs' vessel admitted that he knew them to be true of other docks before he placed his vessel in this dock.

There was also evidence tending to show that the dock was empty of water for nearly its whole length at low tide; that the ridges of mud above described were then plainly visible for a great part of their length; and that the plaintiffs' vessel lay at the end of the defendant's wharf before hauling in to the dock alongside it, from high water, at about eight or nine o'clock in the morning, on one day, until high water the next day, during nearly all of which time the master of the vessel remained on or near his vessel, and about the wharf or dock. There was no other evidence tending to show that the master saw any of the ridges in the dock, or knew of their location, or knew that there were any obstructions in the dock before he entered it.

The plaintiffs put in evidence to the effect that a survey was made of the dock soon after the vessel left it, by two master mariners and the mate, and that the bottom was found uneven, and in some places hard substances were found, some as large as a water-pail; that a plan of the measurements then taken was made, and put in evidence before the jury, which showed different depths of water, varying from three feet to seven feet, in the berth and the positions of the ridges in the dock; that coal sometimes fell into the dock between the scaffolds and vessels while unloading; that their vessel was thirty-two feet wide and one hundred and thirty-two feet long, and was a foot or two broader on the bottom than many vessels of her size and class; that, in taking the ground at low water, she rested with her bilges upon the two ridges on each side of the keel track before her keel rested on the bottom between them, thus causing her to strain; and that the hard substances above mentioned were imbedded in the mud at the bottom of the keel track, and scraped and otherwise injured the vessel.

The master testified that, on the day he hauled into the berth, the defendant was present upon the wharf, and showed him where to place his vessel; that he asked the defendant if it was

a proper place to lay a schooner, and the defendant said it was, that he then told the defendant that she was a large and valuable schooner, and needed considerable room, to which the defendant replied that it was all right, there was no trouble with the dock; and that he thereupon hauled his vessel to the place indicated, which was the usual place where vessels discharged at the wharf. It did not appear that the defendant knew the width of the schooner.

The defendant's evidence tended to show that the quantity of coal falling into the dock was very small, and was usually removed by fishermen, who came to look for it every day in boats; and that there were no hard substances imbedded in the mud which could injure a vessel. The defendant admitted his presence upon the wharf when the schooner hauled in, and that he showed the master where his after hatch should lie, but denied that the above conversation, or any such conversation, ever took place.

The defendant asked the judge to instruct the jury as follows: " 1. If the jury find that the defendant exercised ordinary care in keeping his dock safe for vessels, and that this vessel received damage there because she was wider than the berth usually occupied by vessels at that dock, but for no other reason, the defendant is not responsible.   2. If the jury find that the master, knowing that his vessel was broader than most vessels of the same class, laid her in a berth that was too narrow for her, but was otherwise a suitable and proper one, without previous examination or measurement, and that the damage was caused by the narrowness of that berth for his vessel, but for no other reason, the defendant is not responsible."

The judge refused to give these instructions; and instructed the jury that the defendant was bound to exercise ordinary and reasonable care that his dock should be in a suitable condition for such vessels as he invited or allowed to come there; that, if there was anything peculiar about the construction of the plaintiffs' vessel calculated to mislead the defendant as to the room she needed, it would be the duty of the plaintiffs to call his attention to it, but that otherwise the defendant would be responsible for the exercise of ordinary care in his judgment as to the safety of the dock for his vessel; that the master was also bound

to ordinary care, and could not carelessly run into danger ; and that it was for the jury to find whether or not the master had a right to infer, either from the presence of the defendant upon the wharf when the schooner hauled in, or from the conversation above stated, if they believed that such conversation took place, that he would find the dock free from anything that would injure his vessel.

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*J. C. Dodge & F. Dodge*, for the defendant.

*J. Nickerson*, for the plaintiff.

MORTON, J. The general rules of law applicable in cases of this character are well settled. The owner or occupant of a dock is liable in damages to a person who, by his invitation express or implied, makes use of it, for an injury caused by any defect or unsafe condition of the dock which the occupant negligently causes or permits to exist, if such person was himself in the exercise of due care. Such occupant is not an insurer of the safety of his dock, but he is required to use reasonable care to keep his dock in such a state as to be reasonably safe for use by vessels which he invites to enter it, or for which he holds it out as fit and ready. If he fails to use such due care, if there is a defect which is known to him, or which by the use of ordinary care and diligence should be known to him, he is guilty of negligence and liable to the person who, using due care, is injured thereby. *Wendell* v. *Baxter*, 12 Gray, 494. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216. *Thompson* v. *Northeastern Railway*, 2 B. & S. 106. *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93.

In the case at bar, there was conflicting evidence as to the state of the dock and as to the cause of the injury to the plaintiffs' vessel, and the presiding judge was required to submit the case to the jury. He did so, with instructions which are in substantial accordance with the rules stated above. The defendant contended, from the evidence, that the vessel was wider than those which usually occupied his dock, and he asked the court to give two instructions which were properly refused. The first instruction requested would exonerate the defendant from liability if, knowing that the vessel was of unusual width, he

had invited the plaintiff to lay her there. The rule of law is not, as argued by the defendant, that he was only bound to keep his dock "safe for that class of vessels which ordinarily came there," but was correctly stated by the presiding justice to be, that "the defendant was bound to exercise ordinary and reasonable care that his dock should be in a suitable condition for such vessels as he invited or allowed to come there." The second request bears upon the question of the due care of the master, and was rightly refused. It could be supported only upon the theory that it was, as matter of law, negligence for the master to lay his vessel in this berth, without previous examination or measurement, knowing that his vessel was broader than most vessels of the same class, but not knowing that the berth was too narrow for her. The true rule was stated to the jury, that the master was bound to use ordinary care, and could not carelessly run into danger. We cannot say, as matter of law, that he was negligent because he did not examine or measure the dock and berth. It was for the jury to determine whether the conduct and conversation of the defendant excused the master from making any more particular examination than he did make, and whether, upon all the evidence, he used such care as men of ordinary prudence would use under the same circumstances.

Upon the whole case, we are of opinion that the instructions requested were properly refused; and that those given are not open to exception by the defendant.

*Exceptions overruled.*