## THE STROMA.

### NAPIER SHIPPING Co., Limited, *v.* PANAMA R. Co.

*(Circuit Court of Appeals, Second Circuit.* February 16, 1892.)

#### No. 13.

##### WHARVES AND WHARFINGERS—OBSTRUCTION—KNOWLEDGE—LIABILITY.

Libelant's steamer was berthed at respondent's wharf, alongside of which lay a sunken wreck. The presence of the wreck was known both to respondent's agent and to the agent of libelant, who applied for the berth. There was no understanding, express or implied, relieving the respondent from the ordinary obligations of a wharfinger, except the implied obligation on the steamer to go to the particular berth assigned. Respondent's agent saw the steamer at the wharf discharging, but made no objection to the berth. The steamer was afterwards injured by the sunken wreck, and sank in the slip. *Held*, that the steamer's agent was justified in assuming that respondent's agent had better information than he had as to the condition of respondent's premises, and in relying and acting upon such assumption; and that as a wharfinger, in offering accommodations for hire, the respondent impliedly agreed that the steamer would not be exposed to danger arising from concealed obstructions known to its agent, and which the steamer was not required to anticipate; that respondent therefore was liable for the injury done the steamer.

42 Fed. Rep. 922, reversed.

In Admiralty. Appeal from the circuit court of the United States for the southern district of New York, affirming *pro forma* a decree of the district court of the United States for the said district, dismissing the libel. Reversed.

*Butler, Stillman & Hubbard,* ( *Wilhelmus Mynderse,* of counsel,) for appellant.

*Coudert Bros.,* ( *Frederick R. Coudert,* of counsel,) for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is a suit by the Napier Shipping Company, the owner of the steamer Stroma, to recover of the respondent, the Panama Railroad Company, as a wharfinger, for injuries sustained by the steamer in consequence of the negligence of the respondent in assigning her to an unsafe berth. The respondent was the proprietor of piers No. 1 and No. 2, and the slip between these piers, in the harbor of Colon, Isthmus of Panama. It had been engaged in dredging in the slip, and had used for this purpose a steam dredge consisting of a shallow scow, upon which was a boiler, and near one end a crane. During a violent storm the dredge foundered, and sank in the slip. The respondent employed a wrecking vessel to raise the dredge and remove it, and operations in this behalf had been progressing for about three weeks prior to the time of the injuries to the libelant's steamer. The diver of the respondent had found the wreck lying in broken fragments, the scow diagonally at a little distance from the northerly side of pier 2, and the crane and boiler detached, and lying on the bottom of the slip, some distance further from the pier. Attached to the scow, and an integral part of it, was a spindle, the pivot of the crane, which was an upright timber capped with iron, about 9 feet long, and located in the middle of the forward end of the scow. He reported the scow as having 22 feet of water above her. Subsequently to the accident the spindle was found to be projecting from the scow at a point only about 21 feet away from the northerly side of pier 2. The diver had not observed it. About three weeks after the sinking of the dredge, and on December 29, 1888, the agent of the libelant's steamer at Colon, in expectation of her arrival at that port within the next day or two, applied to the agent of the respondent for a berth. The Stroma was a steel steamer, 210 feet in length, and her draught, when loaded with cargo, was about 13 feet aft and between 10 and 11 feet forward. Her agent knew that the respondent's dredge had sunk in the slip somewhere between the two piers, and in fact he saw her sink; but he did not know precisely where she had sunk. The piers were about 150 feet apart, and about 400 feet long. He supposed that the Stroma could make her berth, and discharge safely at the north side of pier 2, at the seaward end; and he suggested to the respondent's agent that she be given a berth at that place. The respondent's agent assented to this suggestion. According to the course of business between the respondent and vessel agents at Colon it was customary, upon a berth being assigned to a vessel, to leave the putting her at berth entirely under the management of her agent; the agent to report to the respondent after the berthing of the vessel. The Stroma arrived early on the morning of December 31, 1888. Her agent was present, and by his instructions she made her berth on the north side of pier 2 at the seaward end. The respondent's agent, whose office was but a short distance away, saw the steamer as she was making her berth, and when she was made fast, and throughout the day while she was discharging. Some of the employes of the respondent were present while the steamer was being berthed. No intimation was given by the respondent's agent, or by any one on behalf of the respondent, to any one connected with the-

steamer, that she was moored at a place to which she had not been assigned, or that she was in an unsafe place. The steamer continued there unloading until about 6 o'clock P. M., when it was found that she had been forced upon the spindle, apparently in consequence of the lowering of the tide and the swell caused by a light wind. The spindle pierced the steamer's bottom, and injured her so badly that she soon filled and sank. When it was discovered that her bottom had been pierced, her master sent for the agent of the respondent, and the latter, together with one of the managers of the respondent, visited the steamer, and at that time expressed themselves as unable to account for the injury. Later in the evening the master of the steamer formally notified the respondent that he would hold it liable for the injury to his vessel; whereupon the respondent's agent replied that the steamer had been hauled to the pier without authority from the respondent, and the respondent would look to her owner for any damages which might arise by her sinking at a berth to which she had not been assigned.

We are unable to agree with the learned district judge who decided this cause in the court below that the respondent's agent merely consented to permit the steamer's agent to berth her at the pier at a place beyond the sunken wreck, or that the latter was aware of the risk, and took the chances of avoiding it. We think the respondent's agent supposed, as did the steamer's agent, that there was sufficient room for a small steamer like the Stroma to make her berth and be discharged with safety at the place where she was subsequently berthed; that he supposed that the wreck lay far enough from that end of the pier, and there was so much water above the scow that the Stroma would be safe there, although it would not be a safe place in which to berth a large vessel; and that he overlooked the fact that the spindle was attached to the scow. His conduct is very convincing that the steamer was berthed at the place where he expected she would be, and does not square with his testimony that he consented to her being berthed at the end of the pier, but not at the side. His conduct also denotes very persuasively that he believed she was in a safe place where she lay. He would have expostulated when he saw where she was being berthed and discharged if she had not been rightfully there, or if he had supposed she was incurring danger of injury from the wreck. He knew that she would not have been placed where she was if those in charge of her were aware that she was in danger there, and that his principal, as a wharfinger for compensation, was at least morally bound to notify them of a peril of which they were ignorant. Good faith and common courtesy would have prompted him to give warning, even though he considered the respondent under no legal liability, if he had not supposed she was in a safe place. Even after she was injured he did not think of the sunken wreck as the cause. His subsequent conduct, when he found that a claim for damages was to be made against the respondent, was not consistent with the theory that he had given permission to her agent to berth her at his own risk. If that had been the understanding between him and her agent, he would have said so; but, instead of taking that

position, he insisted that she was there without right, and that her owner was therefore answerable to the respondent for impeding access to the pier by his disabled steamer.

Upon the facts, as we find them to be, we think the respondent is liable. Although the respondent's agent assigned the berth to the steamer at the request of the steamer's agent, and with the knowledge of the latter that there was a sunken wreck somewhere in the vicinity of the berth, there was no agreement or understanding, express or implied, relieving the respondent from the ordinary obligations of a wharfinger, except that by designating the particular place at which she was to have a berth it was implied that she would not attempt to make a berth at any other place on the respondent's premises. It is not necessary to discuss considerations which would be pertinent if the steamer's agent had been aware of the existence of the dangerous obstacle in the berth, or even of the precise location of the wreck. Under the circumstances, and when the respondent's agent consented to assign the berth, without any suggestion that it was unsafe, the steamer's agent was justified in assuming that the respondent had better information than he had of the condition of its own premises, and in relying and acting upon the presumption. As a wharfinger, offering accommodations to the libelant's vessel for compensation, the respondent impliedly undertook that the steamer would not be exposed to unnecessary hazard in using the part of the premises to which she was assigned, arising in consequence of any concealed obstruction or danger, known to the respondent, or of which it ought to have knowledge, the existence of which those in charge of the steamer were not required to anticipate, and there was a breach of this obligation if such an obstruction existed. *Mersey Dock Trustees* v. *Gibbs*, 11 H. L. Cas. 686; *Wendell* v. *Baxter*, 12 Gray, 494; *Nickerson* v. *Tirrell*, 127 Mass. 236; *Smith* v. *Havemeyer*, 36 Fed. Rep. 927. Very likely the respondent's agent believed from the report of the diver that the only part of the wreck near the berth assigned the steamer was the scow, which, with 22 feet of water above her, at a place where the fall of the tide is only 18 inches, would not endanger a vessel of the Stroma's draught, even if she were moored over the scow; and undoubtedly he overlooked the probability of danger from the spindle. But he should not have permitted the steamer to be berthed where she was until there had been a sufficiently careful examination of the condition of the wreck to demonstrate that she could be berthed there with safety. The respondent cannot be excused from responsibility for the consequences of its own remissness. The libelant is entitled to a decree for the amount of its loss. The decree is reversed, and the cause remanded with instructions to ascertain the libelant's loss, and to decree for the libelant, with costs of the district court and of this court.