# SMITH *v.* BURNETT.

ADMIRALTY JURISDICTION; TORTS; LESSEES OF WHARF, LIABIL-
ITY OF; MEASURE OF DAMAGES.

1. The definition of the term "torts" when used in reference to
admiralty jurisdiction is not confined to wrongs or injuries
committed by actual or direct force, but includes wrongs suf-
fered in consequence of the negligence of malfeasance of
others, where the remedy by common law is by an action on
the case.
2. Where a vessel is injured and sunk while receiving her cargo at
a wharf by a rock in the bed of the river within the berth
assigned to the vessel, and such obstruction is shown to have
been negligently allowed to exist by the lessees of the wharf,
and negligence and want of due care is also shown on their
part in representing to the master of the vessel that the depth
of water in the berth was sufficient to float the vessel and to
maintain her in safety while being loaded, the lessees are
liable in damages to the owner for such injury in the absence
of evidence showing want of due care on the part of the master.
3. In such a case it is not necessary to show actual knowledge on
the part of the lessees of such an obstruction to render
them liable; they are bound to know the condition of the berth
before representing it to be safe and inviting the vessel to be
moored therein.
4. The extent of the recovery in such a case by the vessel owners is
a sum sufficient to fully indemnify them for their loss, provided
no part of the loss has been occasioned by their failure or the
failure of their agents or servants to exercise ordinary skill
and diligence to stay or prevent the increase of loss after the
accident.

No. 582.  Submitted October 15, 1896.  Decided April 6, 1897.

Hearing on an appeal by the respondent from a decree
in admiralty on a libel for an alleged injury to a vessel.
*Affirmed.*

The COURT in its opinion stated the case as follows:

This case is in admiralty, *in personam*, and the libel was
filed by the appellees, Charles Burnett and others, against

the appellants, Charles G. Smith and Charles G. Smith, Jr.,
for an alleged injury to their vessel, the schooner "Ellen
Tobin," while moored in berth at the wharf of the appel-
lants on the bank of the Potomac River, at Georgetown,
District of Columbia, for the purpose of being loaded from
said wharf, *by and for the appellants.*   The injury complained
of is alleged to have been occasioned by the negligent al-
lowance by the appellants of a dangerous rock on the bed
of the river within the limits of the berth at the wharf to
which the vessel was invited to take position, and which
dangerous obstruction was unknown to the master of the
vessel, and who acted upon the assurance of the appellants,
by their agent, that the depth of water in the berth in front
of the wharf was sufficient, and that the berth was safe for
the loading of the vessel from the wharf.

The material facts alleged in the libel and shown in proof
appear to be these: The appellants are lessees of the wharf,
and water rights extending to the channel of the river, and
the berth assigned to and taken by the schooner for purpose
of loading was in front of the wharf and within the leased
premises.   The appellants were engaged in the business of
crushing and shipping stone from the wharf to different
points, principally to Fortress Monroe; and the schooner
had been brought up the river, by pre-arrangement with a
ship broker in Georgetown, for the purpose of being loaded
by the appellants at their wharf with crushed stone, to be
taken to Fortress Monroe, in Virginia, to be used in govern-
ment work at that place.

There appears to be no doubt of the fact that the vessel
was staunch and in good repair, though she had been built
and engaged in the coasting trade for a good many years.
She was a three-masted schooner of about 600 tons capa-
city, and 419 tons net registry; and was 136 feet long and
32 feet wide.   She was registered at the New York custom
house as a coasting vessel of the United States.   She was

owned by the appellees at the time of the injury complained of.

It also appears that the vessel was sunk on the 6th of August, 1893, as she was moored in the berth at the wharf, while receiving her cargo of crushed stone from the wharf, by means of a chute extended from the wharf to the hatchway of the vessel. The vessel was about two-thirds loaded, having received about 400 tons of her cargo, before signs were discovered of her distressed condition. She was then taking water so rapidly that the pumps could not relieve her, nor could the extra assistance employed by the master avail to save her from breaking and sinking in the berth. The work of loading was stopped on Saturday evening, with the intention of resuming the work of loading on the following Monday morning; and the captain of the vessel, at the time of stopping work on Saturday, made soundings around the vessel, and supposed that she was then lying all right. But on Sunday morning it was discovered that there was so much water in her that she could not be relieved by her pumps; and by 5 o'clock on the afternoon of that day she had filled with water, and broke in the middle, and sank in her berth, where she remained, with her cargo under water, until the 1st of November, 1893, when the stone was pumped out of her, and she was then condemned as worthless, and was afterwards sold at auction for $25 to one of the owners.

The appellants, in their answer to the libel, deny all negligence imputed to them by the appellees, and insist that they are in no way responsible for the disaster to the vessel. They also filed a cross-libel, claiming $2,700 for damages caused by the fault of the appellees in allowing the vessel to sink in the river in front of their wharf, and to remain there for an undue time. The appellees filed a replication to the answer, and an answer to the cross-libel. It was upon this state of allegation and response that a large mass of proof was taken; the most of it being very conflicting,

especially that relating to the question of negligence mutually charged, and as to the value of the vessel.

*Mr. Nathaniel Wilson* and *Messrs. Edwards & Barnard* for the appellants:

1. If the appellees have a good cause of action against the appellants, it must be because the appellants have failed to discharge some non-contractual duty incumbent upon them, and which failure of duty was the proximate cause of the injury to the vessel, following in natural sequence therefrom. Shearman & Redfield on Negligence, Sec. 1 to 11; Wharton on Negligence, Sec. 3.

2. The injury to the vessel was not caused by any "imperfection in the discharge of a duty" by the appellants; they were not, in any sense, the "proximate cause" of it; and it did not arise or follow any act or word, or want of act or word on their part, "as a natural and ordinary sequence," as effect from an immediate or direct cause; and that being so, the libellants had no right to abandon their boat after she was sunk in front of the wharf, or to allow her to remain there an unreasonable time, to the damage of appellants; and the court should have given relief as prayed by the cross-libel.

It was not the duty of the respondents to keep the bottom of the river in front of their wharf perfectly even. That would have been impossible. *The Calliope,* 1 App. Cas. 23. They were required to do no more than keep the berth in a reasonably fit and proper condition for the purposes for which it was to be used by the libellants. They were not required to keep any specified depth of water in the berth.

Information given by the wharfmen to the master of a vessel in the situation of the Tobin does not absolve the master from considering for himself and determining what he ought to do for the safety of his vessel. The utmost that can be required of the wharf owner under such circum-

stances is, according to the weight of authority, to use ordinary care, in keeping his wharf in such a state as "to be reasonably safe for the ordinary use of vessels that are permitted to use it." Spencer on Marine Collisions, Sec. 104; *Christian* v. *Van Tassel*, 12 Fed. 884; *Leonard* v. *Whitwell*, 22 Fed. 741; *Nickerson* v. *Tirrell*, 127 Mass. 236; *Pittsburg* v. *Greer*, 22 Pa. St. 54.

3. The proximate cause of the injury in this case was the negligence of the master, Captain Hawkins. His own soundings showed the uneven bottom; his general knowledge of the river told him there was a rock bottom; the Government map and the sketch by the diver corroborate him in some respects as to the result of his soundings, and show the most there was in the said river to injure a boat.

The master of the vessel is, on his part, in placing, loading, and in the management of his vessel required to exercise the care, prudence, and skill which can reasonably be expected of a competent and vigilant captain. *Sullivan* v. *Lake Sup. El. Co.*, 56 Fed. 735.

This negligence of the captain, which is proved by the libellants' own testimony and made conspicuous by the proofs adduced by the respondents, relieves the respondents from liability for the libellants' loss. *Crosson* v. *Wood*, 44 Fed. 94; *Elting* v. *East Chester*, 50 Fed. 112; *Union Ice Co.* v. *Crowell*, 55 Fed. 87; *Sullivan* v. *El. Co.*, 56 Fed. 735.

The duty of the owner of a ship who offers to carry a load of freight, is clearly stated in *Putnam* v. *Wood*, 3 Mass. 481: "It is the duty of the owner of a ship when he charters her, or puts her up for freight, to see that she is in a suitable condition to transport her cargo in safety; and he is to keep her in that condition, unless prevented by perils of the sea, or unavoidable accident." As to the "utmost fidelity and attention" required of the master, see Abbott on Shipping, 144, 13 Ed. 180. In this case, the damage to the cargo was waived by Smith & Son, in order to assist the owners in

getting the vessel away from their front, but the damage otherwise caused them was not waived, but is insisted upon as matter of right.

An injury arising from inevitable accident, or from an act that ordinary human care and foresight are unable to guard against, is but the misfortune of the sufferer, and lays no foundation for legal responsibility. *The Nitro-Glycerine Case*, 15 Wall. 524, 537. The principle there stated would relieve the appellants, but not the master, from the charge of negligence.

As to master's duty in watching his vessel, see *Christian v. Van Tassel*, 12 Fed. 884. In that case the court held both parties to blame and the damage was divided equally between them. See also Lord Herschell's opinion in the case of *The Calliope*, 1 App. Cas. 25. The whole case is instructive as to reciprocal duties of master and wharf owner. It is the duty of a ship master, before placing his vessel in a berth, to ascertain whether the depth of water in the dock is sufficient for the draft of his vessel. *Nelson v. Chem. Works*, 7 Ben. 37. He must know also whether his vessel is strong enough to safely take the ground at low water.

A different rule applies as to the duty of a wharf owner in relation to condition of bottom in slip or dock where he has exclusive possession and control, from that in relation to bottom of river or sea in front of a long-shore wharf, and over which he has no exclusive control or right of possession. The one is on private premises; the other is on a public waterway, free to the world, and surveyed, and charts of it made by public authority, and open to the inspection of all navigators.

Where the rocky bed of a river is only uneven by reason of some of the natural rock projecting higher than others, and the wharf owner knows of no obstruction that is necessarily dangerous; and especially where he requests the master to make his soundings and ascertain for himself, and the master makes such soundings and ascertains the uneven

bottom, we maintain that the wharf owner is exonerated from any further liability; and the risk of injury to the boat from being allowed to settle down on such bottom while loading or lying at anchor, must be borne by the master or owner.

A different degree of diligence is required of a master where he has ample water to float when empty, but a small margin when loaded, in discharging or taking on a cargo. In the one case, he is invited into a berth at a wharf, or in its vicinity, when he must have sufficient water to float a loaded boat, and he informs the wharf owner of the depth required, and he cannot by watchfulness escape grounding, if the water is not deep enough. In the other case, he has ample water when he commences loading, and he can stop and shift at any moment when he sees his cargo is settling the boat down to within a short distance of the bottom; and proper vigilance on his part in such a case will prevent any possibility of grounding.

4. The principles and rules of evidence by which the damages are to be ascertained in cases like the present are well settled. *The Baltimore,* 8 Wall. 386; Spencer on Marine Collisions, Sec. 200. The best evidence of the market value is the testimony of competent persons who knew the vessel and have knowledge of the value of vessels of its age, class and condition. *Leonard* v. *Whitwell,* 19 Fed. 1. Neither the cost of construction, nor the price paid by nor the special value to the owner, nor the profits are to be taken into consideration if the market value can be shown. The value to be paid is the full market price, whether that be more or less than the cost. If at the time of the loss there was no market for such vessels owing to the state of the market or the peculiar character of the vessel, then if the vessel be comparatively new consideration can be given to the cost of construction, making a proper allowance for deterioration.

These rules have been stated again and again in the text books and applied in numerous cases. Spencer on Marine

Collisions, Sec. 201; *The Pennsylvania,* 5 Ben. 253 ; *The Utopia,* 16 Fed. 507; *The Laura Lee,* 24 Fed. 483; *The City of Alexandria,* 40 Fed. 697 ; *La Normandie,* 58 Fed. 427.

5. It was the duty of the libellants after the accident to exercise ordinary skill and diligence relative to the disposition of the property. As they did not abandon the vessel but continued to claim and exercise the rights incident to ownership, and actually made a sale for a grossly inadequate price for their own advantage, they are chargeable with the fair value of the wreck, and not merely with the sum for which they thought fit to sell her. They cannot claim the right to recover the full value of the vessel and also their expenditures in pumping out the stone with which the vessel was loaded. They were under no obligations to take out the cargo, or to attempt to raise the vessel, if they considered her a total loss. The respondents are not responsible for the value of the vessel, and also for the cost of efforts to raise either cargo or vessel.

*Mr. Randall Hagner* for the appellees:

1. The owners of the vessel were under a three-fold obligation to remove her out of navigable water : 1. She was a wreck, and therefore the act of 1890 required them to remove her. 2. They were compelled by notice and letter of appellant's attorneys. 3. The law maritime compelled them to get her out of navigable waters before they could sue for her value. *The Baltimore,* 8 Wall. 177 ; *The Havilah,* 1 U. S. App. 142; *The Empress Eugenie,* 1 Lush. 129 ; *The Venus,* 17 Fed. 925; *The America,* 11 Blatch. 485; *The Nebraska,* 3 Ben. 261 ; *The Columbus,* 3 W. Rob. Rep. 161 ; *The Falcon,* 19 Wall. 75.

2. That other vessels loaded there for many years with safety was valuable as tending to show there was no defect or unfitness in construction, but became quite unimportant when it appeared beyond doubt that there were defects

capable of producing mischief. *Smith* v. *Havemeyer*, 36 Fed. 928; *McCalden* v. *Parks*, 66 Hun, 323.

3. Degrees of negligence in admiralty are not to be regarded. *Steamer New World*, 14 How. 469. They do not permit of such precision and exactness of definition as to be of any practical advantage in the administration of justice without a detail of the facts which they are intended to designate. *Gill* v. *Iron Co.*, 1 L. R. C. P. 600.

It is an ordinary presumption that a ship is seaworthy. *Pymann* v. *Van Singen*, 3 Fed. 802.

The lessee is responsible for the condition of the wharf, even when the lessor is bound to repair. *Leonard* v. *Decker*, 22 Fed. 741; *Carlton* v. *Iron Co.*, 99 Mass. 219. Lessee held responsible for injury in the berth. *O'Rourke* v. *Peck*, 40 Fed. 907; *Barbour* v. *Androndoth*, 102 N. Y. 406. The leading case of damages for injuries to vessel at a dock is that of *Sawyer* v. *Oakman*, 7 Blatch. 290. In the case of *The John A. Berman*, 6 Fed. 535, the vessel was invited in as in the case at bar.

The duty of the wharfinger is defined in *Schooner Niantic*, 6 Fed. 635; see also *Christian* v. *Van Tassel*, 12 Fed. 884; *Schooner Calvin P. Harris*, 33 Fed. 295; and as to silence of respondent, *Schooner Annie R. Lewis*, 50 Fed. 556; *The Stroma*, 50 Fed. 561. Another case involving invitation to vessel to come in is found in 127 Mass. 236; and an important case is *Railroad Co.* v. *Atha*, 22 Fed. Rep. 920. See also Ray on Negligence of Imposed Duties, Personal, p. 566.

The following case explains duty to close dock if not safe. 30 Fed. 456. As to when it is the duty of the ship's master to ascertain depth of water. 7 Benedict, 37. In the case at bar the "Tobin's" captain did all he was told to do, viz: to sound around the vessel. The above case in 7 Benedict was entirely gratified by the conduct of the master in the case at bar. As to the allegation of leaking not being sustained, see *Transportation Co.* v. *Mayor*, 37 Fed. 160.

The leading cases in England are, *The Mercy Docks* v. *Gibbs*, 1 H. L. Cas. 93; *The Metropolis*, 1 Parsons on Shiping, p. 397 and note; *The Calliope*, 1 App. Cas. 23.

As to the concurrent remedy in admiralty for such remedy see the case of the *Navigation Co.* v. *Bank*, 6 How. 390. As to scow being decided to be part of wharf, see 105 Ind. 322. The private owner of a wharf is responsible. *Wendell* v. *Baxter*, 12 Gray, 949. A city is bound. *Pittsburg* v. *Greer*, 22 Pa. St. 54. For an important case of injury to vessel at dock, see *Ice Co.* v. *Crowell*, 55 Fed. 87. In this case half the damages were allowed and the damage was the repairs. For a case where the river bottom was dredged just before the injury and where vessels had loaded there before even larger than the one injured, see *McCalden* v. *Park*, 66 Hun, 323.

It is not practicable for vessels navigating rivers that they should send ashore to make inquiries as to the depth of water at a berth. Libellants' captain on coming there for the first time was entitled to notice of the concealed danger. *Heissenbuttel* v. *New York*, 30 Fed. 457. The wharfinger is bound to know the depth of the water, and the burden is upon the defence to establish ·contributory negligence affirmatively. *Smith* v. *Havemeyer*, 36 Fed. 927. In this case the pier had been used for many years with safety, and yet the respondents were held liable.

4. The cross libel cannot be sustained. 42 Fed. 920; *The Niagara*, 6 Fed. 906; *Dawson* v. *Sheridan*, 53 N. Y. 586; *Crowell* v. *The Wolf*, 4 Fed. 152; *The Dove*, 91 U. S. 381.

For the rule with respect to cross libel and salvage, see *The Blackwell*, 10 Wall., p. 10; *The Wave*, 2 Payne, 131; *Bondrew* v. *Sherwood*, 22 How. 214; *The Comanche*, 8 Wall., p. 248. Ordinary appeals in admiralty are not tried *de novo*. *The Beech Dene*, 55 Fed. Rep. 526.

The decision of the district court upon the controverted question of fact as to which the evidence is conflicting in an admiralty case will not be reversed by the circuit court

unless clearly contrary to the preponderance of the evidence. *The Parthian,* 48 Fed. 564; *The Albany,* 48 Fed. 565. Where the commissioner has all the testimony of the witnesses before him the safer rule appears to be not to disturb the finding of the commissioner. *The Mayflower,* 1 Brown's Adm. 392; *The Grafton,* 1 Black, 173–178; *The Niantic,* 1 Black, 211–217. But in this case the commissioner would not hear our evidence and did not have it all before him, and threw out our witnesses, and the court below heard them as per order, and was therefore justified in making his own award, and as the testimony was taken orally before him it should not be reviewed.

5. For the part the earnings of a ship play in valuation, see *The Colorado,* 1 Brown's Adm. Rep. 413; 11 Fed. 520; *The Nebraska,* 3 Ben. 261; 17 How. 175.

Evidence of repairs will not be received if repairs are already made. *The Mayflower,* 1 Brown's Adm. Rep. 393. As to the valuation of vessels in the United States, the cases are well set out in Spencer on Marine Collisions, page 361, Sec. 201, and note 3 thereto. Other cases are the following; *The New Jersey,* Olcott's Adm. 444; *The J. E. Trundeau,* 54 Fed. 907; *The City of Alexandria,* 40 Fed. 697; *Crowell* v. *The Beatrice Havener,* 50 Fed. 232; *Williamson* v. *Barrett,* 13 How. 101; *The Venus,* 17 Fed. 925; *The Ant,* 13 Fed. 91; *The Granite State,* 3 Wall. 310; *The Mary Evelyn,* 14 Blatchf. 497.

It was proper to allow the libellants to prove by comparison with vessels of her class what the real value of the "Tobin" was. Courts of admiralty are not bound by the rules of evidence which apply in courts of common law, and may, where justice requires it, take notice of matters not strictly proved, and may receive in evidence testimony not even admissible in other courts. Benedict's Admiralty Practice, p. 297 (3d Ed.), Sec. 517, quoting, *The Peerless,* 1 Vernon Lush, 41; *The J. F. Spencer,* 3 Ben. 338; *The Boskenna Bay,* 22 Fed. 662. The plaintiff launches a *prima*

*facie* case by showing the value at the time of sailing. Lowndes on Collisions, p. 141. No fixed rule of depreciation can safely be adopted for the valuation of water craft. Spencer on Marine Collisions, Sec. 201.

The vessel in this case was at least a constructive total loss. Spencer on Marine Collisions, Sec. 200. But whether regarded as a total loss, or a constructive total loss, *restitutio in integrum* is the doctrine which applies to the case. *The Baltimore*, 8 Wall. 377; *The Ann Caroline*, 2 Wall. 532; *The Colorado*, 1 Brown, 411; *The Atlas*, 93 U. S. 307, and cases cited. Interest is allowed under this doctrine of *restitutio in integrum* on all sums of damage from date of collision to date of judgment or decree. *The Morning Star*, 4 Bissell, 62; *J. E. Trundeau*, 54 Fed. 907; *Packet Co.* v. *Pickles*, U. S. App. 1; *The America*, 11 Blatchf. 48.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The principal question in the court below was, and it is the principal question here, who was responsible for the cause of the injury to the vessel—by whose negligence, if there was negligence, was it that the damage was produced?

By the preliminary decree of August 27, 1895, it was decreed and sentenced that the libellants were the owners of the schooner "Ellen Tobin" at the time of the injury to her complained of in the libel, and that the respondents, Charles G. Smith and Charles G. Smith, Jr., were solely liable for such injury and damage thereby resulting to the libellants in the original libel, and that the latter were not liable for any damages in the cross-libel. It was further decreed and sentenced that the first of the said causes, that arising on the original libel, be referred to a special commissioner with directions to ascertain and report the amount of damages to which the libellants were entitled, consisting of the value of the vessel immediately prior to the injury, together with the reasonable expenses of raising and removing said vessel and said wreck; and further, that the com-

missioner should consider the evidence already in the record, bearing upon the question referred to him, and such additional evidence as either party might think proper to introduce before him, and report with reasonable speed.

Under this reference, the special commissioner, upon the evidence already in the record, and after hearing further testimony on each side, and considering the same, made his report to the court on January 21, 1896, whereby he found the amount of damages, to which the libellants were entitled under the decree of the court, to be $7,063.12, estimating the value of the vessel at $6,000.

To this report both parties, libellants and respondents, excepted for several reasons assigned; and upon hearing the exceptions the court allowed the libellants to produce further testimony in open court; after which the cause came on for final hearing and decree, and on the 23d of March, 1896, the court decreed that the libellants were entitled to recover $10,478.09, being $8,000 for value of the vessel, with interest on that sum from August 6, 1893, to the date of the decree, and $1,063.12 for expenses of raising vessel and cargo, after allowing credit for value of wreck and other things, and interest on that sum from November 5, 1893, to date of decree. It is from this decree and sentence that respondents have appealed.

We shall not go into any detailed statement of the evidence. From a careful examination of the entire record, we are quite satisfied that the conclusions reached by the learned judge below, and embodied in the decrees referred to, are in all respects fully warranted by the evidence. We think it clearly established by the decided preponderance of the evidence, that the injury sustained by the vessel was caused by the rock in the bed of the river, within the berth assigned to the vessel, and that such obstruction was negligently allowed to exist by the appellants, and that there was negligence and want of due care on their part in representing to the master of the vessel that the depth of the

10 Ct. App.— 32

water in the berth was sufficient to float the vessel, and to maintain her in safety while being loaded from the wharf. And there is an entire failure of evidence to establish the fact, as attempted to be shown by the appellants, that there was want of due care on the part of the master, and a failure to exercise proper supervision for the safety of the vessel, while she was moored at the wharf for the purpose of being loaded.

Such, then, being the case on the facts, what are the legal principles that properly apply to it?

It has long since been settled that the definition of the term "*torts*," when used in reference to admiralty jurisdiction, is not confined to wrongs or injuries committed by actual or direct force. It includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common law is by an action on the case. It is a rule of maritime law, from the earliest times, "that if a ship run foul of an anchor left without a buoy, the person who placed it there shall respond in damages." Emerigon, Vol. 1, p. 417. "Hence, the impinging on an anchor or other *injurious impediment negligently left in the way*, has always been considered as coming within the category of maritime torts, having their remedy in the courts of admiralty." *Phil., Wilm. & Balt. R. Co.* v. *Phil. & Havre de Grace Steam Towboat Co.*, 23 How. 209, 216.

In the case of *Carleton* v. *Franconia Iron and Steel Co.*, 99 Mass. 216, the material facts were not unlike those of the present case. There the facts were, that the defendants built, owned and occupied a wharf extending below low water mark into public navigable waters, and excavated and used a dock in front of the same, as a berth for vessels, bringing cargoes of iron and steel to their works on and adjoining the wharf, to lie and discharge; that there was, and always had been, within the line of this excavation, and in front of a part of the wharf, which was to all appearances suitable for vessels to lie at when discharging their

cargoes, a large rock, concealed under the water and dangerous to such vessels, the existence and dangerous nature of which were known to the defendants, but not to the plaintiffs; that the plaintiffs' vessel came to the wharf by procurement of the defendants, bringing a cargo of iron to them under a verbal charter between the parties, and, while lying at this part of the wharf, settled down with the ebb of the tide upon the rock, without any negligence of the plaintiffs, or of any one employed by them, and was broken in and bilged. In that case, it was held by the court, Mr. Justice Gray delivering the opinion, "that it was immaterial whether the danger had been created or increased by the excavation made by the defendants, or had always existed, if they, knowing of its existence, neglected to remove it or to warn those transacting business with them against it. Even if the wharf was not public but private, and the defendants had no title in the dock, and the concealed and dangerous obstacle was not created by them or by any human agency, they were still responsible for an injury occasioned by it to a vessel which they had induced for their own benefit to come to the wharf, and which, without negligence on the part of its owners, or their agents or servants, was put in a place apparently adapted to its reception, but known by the defendants to be unsafe."

And in a subsequent case, in the same court, that of *Nickerson* v. *Tirrell*, 127 Mass. 236, it was held, that the owner or occupant of a wharf is liable to a person, who, by his invitation, *express or implied,* and in the exercise of due care, places a vessel in the dock, for an injury caused to the vessel by any defect in the dock or by its unsafe condition, which the owner or occupant negligently causes *or permits to exist,* and the existence of which he knows, *or ought, in the exercise of ordinary care, to know*—citing as authorities for the principle stated the cases of *Wendell* v. *Baxter*, 12 Gray, 494; *Carleton* v. *Franconia Iron and Steel Co., supra; Thompson* v. *Northeastern Railway*, 2 B. & S. 106; *Mersey Docks* v.

*Gibbs,* L. R. 1 H. L. Cas. 93.    In that case, there was evidence that the owner of the wharf directed the master where to place the vessel, and, on the master asking if it was a proper place to lay the vessel, he received for reply that it was all right, there was no trouble about the dock; and it was held that the defendant was not entitled to have the jury instructed that if the master placed his vessel there without previous examination or measurement the defendant was not responsible.

Upon the same principle it was held in the case of *Barber* v. *Abendroth,* 102 N. Y. 406, that the owner of a wharf is liable for an injury to a vessel lawfully using it, occasioned by an obstruction in the river bottom adjoining it, known to him, but not to the master of the vessel—quoting and following the case of *Sawyer* v. *Oakman,* 1 Low. 134, and same case affirmed in 7 Blatchf. 290.

This question of the liability of a wharfinger for negligent injuries to vessels at the wharf, has frequently arisen in the Federal courts of the country, and it has been uniformly ruled the same way, and in accordance with the principle we have just stated.    Among the many cases that might be referred to we will only mention those of *O'Rourke* v. *Peck,* 40 Fed. Rep. 907; *Christian* v. *Van Tassel,* 12 Fed. Rep. 884; *The Stroma,* 50 Fed. Rep. 557, 561; *Penn. R. Co.* v. *Atha,* 22 Fed. Rep. 920; *Leonard* v. *Decker,* 22 Fed. Rep. 741; *Union Ice Co.* v. *Crowell,* 55 Fed. Rep. 87.

The evidence in the case, as we have already stated, leaves no doubt of the fact that there was a large rock in the bed of the river within the berth occupied by the vessel in front of the wharf, and that such rock was the cause of the breaking and sinking of the vessel.    But it is argued for the appellants that, assuming such to be the fact, yet the evidence is insufficient to show knowledge on the part of the appellants of the existence of such rock in the berth, or of its dangerous character; and that without such knowledge, there is nothing to fix upon them any such negligence as would

render them responsible for the injury.  But it would be difficult to conclude, upon the evidence in this record, that the appellants did not have knowledge of the existence of the rock and of its dangerous nature.  They had been for some years in the use of the wharf, and of this particular berth; and it appears that not a great while before the occurrence of the accident in question a vessel, while being loaded with stone from the same wharf, and occupying a berth in front of it, struck upon a rock and was injured, and this fact was brought distinctly to the knowledge of the appellants. And subsequently the berth was dredged, and rock was found upon the bottom that was not removed.  But let the fact as to actual knowledge be as it may, it would seem to make no difference upon the question of liability of the appellants. They were bound to know the condition of the berth before they represented it to be safe, or invited the vessel to be moored therein.  *Nickerson* v. *Tirrell, supra.*

In the cases of the *Mersey Docks* v. *Gibbs* and v. *Pierce,* 11 Ho. Lords Cas. 686, there were two cases that arose out of the same transaction.  A ship called the " Sierra Nevada," in entering, or endeavoring to enter, one of the docks of the appellants, sustained injury by reason of a bank of mud left negligently at its entrance.  The ship and the cargo were both damaged ; and two actions were brought against the appellants, one by the owner of the cargo and the other by the owners of the ship.  In those cases, among other defences, the want of knowledge of the obstruction by the appellants was relied on ; but in both cases the Exchequer Chamber held that the appellants were liable ; and upon appeal to the House of Lords, and after a most exhaustive discussion, both judgments were affirmed.  It was there laid down as clear law, that persons who have a duty to perform, and who may be made responsible for injuries if they know of the causes of mischief which in the discharge of that duty they ought to remedy, are equally responsible *if they negligently remain ignorant of those causes of mischief,*

and so leave them unremedied. See, also, the case of *Dock and Harbour Board* v. *Penhallow,* in Exchequer Chamber, 7 H. & N. 229, 236.

The appellants have cited, and relied much upon, the case *The Calliope* (1891), App. Cas. 11, as to the circumstances under which a wharfinger will not be held responsible for injuries to vessels while lying at a wharf. But clearly that case has no application to the present. In that case there was no representation or assurance as to the depth of the water at the wharf, and there was no invitation to enter the berth ; and the court expressly found that the grounding of the vessel was caused by the negligence of the master and pilot, and therefore held the wharfinger not liable.

The appellants being liable for the injury, the next question is, what is the extent of the recovery to which the appellees are entitled ? They are entitled to full indemnity for their loss, provided no part of that loss has been occasioned by the failure of the appellees, their agents or servants, to exercise ordinary skill and diligence to stay or prevent the increase of loss after the occurrence of the accident. *The Baltimore,* 8 Wall. 377. The evidence would seem to make it clear that no ordinary skill or effort on the part of the master of the vessel, or of the appellees, the owners, could have been exercised effectively to save the vessel from total loss after she had broken and sunk, or after it was found that she had taken so much water that she could not be relieved by the use of her pumps. After she had sunk, nothing remained· to be done but to get out the cargo, and to remove the wreck, which the owners were required to do under the statute. Under the circumstances of the case, we see no ground for holding that the injury was increased or the damages in any manner enhanced by the delay in attempting to raise and remove the vessel. And taking into consideration all the circumstances of the case, and comparing the conflicting evidence

in respect to the value of the vessel at the time of the injury sustained, we are of opinion that the court below has not exceeded reasonable limits of indemnity, according to settled principles of law, in the sum awarded to the appellees, by its final decree and sentence of the 23d day of March, 1896.

The cross-libel filed by the appellants was dismissed by the court below, and in so disposing of that libel and claim we perceive no error.   The appellees were not in fault in allowing the vessel to sink, as charged in the cross-libel, and they appear to have acted with reasonable diligence, under the special circumstances of the case, in providing for raising and removing the vessel from the wharf of the appellants.

Upon the whole, we are of opinion that the decree of August 27, 1895, and the final decree of March 23, 1896, should be affirmed ; and it is so ordered.

*Decrees affirmed, with costs.*