**Aniello DE SCALA, Plaintiff,**

v.

**PANAMA CANAL CO., Defendant.**

United States District Court
S. D. New York.

Sept. 10, 1963.

Fisch, Kaplan & Goldman, New York City, Richard L. Fisch, New York City, of counsel, for plaintiff.

Hampton & Dietel, New York City, Alexander, Ash & Schwartz, Sidney A. Schwartz, Joseph Arthur Cohen, New York City, of counsel, for defendant.

United States Department of Justice, Admiralty and Shipping Section, New York City, Louis E. Greco, New York City, of counsel, amicus curiæ.

WEINFELD, District Judge.

This action was brought by the plaintiff, a longshoreman, to recover damages for injuries sustained during the course of berthing the S/S Cristobal in navigable waters at Pier 64, New York City. He was stationed on the pier and was struck on the head by a so-called cat's paw, the weighted end of a heaving line which was thrown by a crew member from the deck of the ship to the pier. The vessel was owned and operated by the defendant, Panama Canal Company, a wholly-owned Government corporation. The plaintiff's employer, John T. Clark & Son, Inc., had been engaged by the defendant to stevedore its vessel. The defense of the suit was undertaken by the Clark company pursuant to an indemnity agreement in favor of the defendant.

Although the action had been pending for almost three years, it was not until the very start of trial that newly substituted attorneys for the defendant challenged the Court's jurisdiction over the defendant. Since the pretrial order implicitly, and the predecessor attorneys

expressly, acknowledged jurisdiction,[1] the Court directed that the trial proceed, but reserved decision on the belated jurisdictional contention. Upon the conclusion of the trial, the Court found in favor of the plaintiff on the issue of negligence and, pending consideration and determination of the jurisdictional plea, also withheld decision on the question of damages.

■ The essence of the plea of lack of jurisdiction is that the Panama Canal Company, as a governmental instrumentality, enjoys sovereign immunity which has not been waived by any Congressional act with respect to claims for personal injuries occurring outside of the locks of the Panama Canal or of the waters of the Canal Zone. The plaintiff answers that defendant's amenability to suits in the District Court based upon personal injury claims has been recognized by Congress and the Executive and upheld by the Courts. The Admiralty and Shipping Section of the United States Department of Justice, in response to the Court's invitation, has submitted a brief as *amicus curiae* and acknowledges that the Panama Canal Company is subject to the Court's jurisdiction. However, it is recognized that whatever the view of the Department of Justice or the Executive, waiver of sovereign immunity may be granted only by Congressional action.[2] The Court has concluded that the Panama Canal Company is subject to the Court's jurisdiction.[3]

The Panama Canal Company is a wholly-owned Government corporation federally chartered in 1948 [4] to replace a New York corporation, also wholly owned by the United States, which for many years had engaged in various activities of a purely commercial character essential to the operation of the Canal.[5] The new corporation was granted the same rights and made subject to the same obligations as its predecessor.[6] In addition to operating, maintaining and protecting the Canal, it continued to engage in auxiliary commercial functions, which included the operation of a steamship line between the Canal Zone and American ports. The S/S Cristobal, the vessel involved in this suit, was one of those so operated by the defendant.

■ Although the Company has been the defendant in a number of reported cases, the precise question here presented—whether Congress intended that the Panama Canal Company enjoy the attributes of sovereign immunity so that it is not suable upon claims of the type asserted in this action—appears not to have been previously considered or directly passed upon. We start with the premise that such immunity is not presumed.[7] And the mere fact that the Company performs the work of the Government in connection with Panama Canal Zone activities does not automatically gain for it immunity from suits arising out of such activities.[8] On the contrary, the growing use by the Congress of wholly-owned corporations to carry on functions which ofttimes include proprietary as well as governmental functions has been viewed as reflecting a "climate of opinion which has brought governmental immunity from suit into disfavor." [9]

The 1948 Act which chartered the Panama Canal Company provided that it "may sue and be sued in its corporate

1. Pretrial Memorandum filed October 4, 1962.

2. See United States v. Shaw, 309 U.S. 495, 500–01 (1940).

3. See generally, Benedict on Admiralty § 210 (1940).

4. Panama Railroad Company Act, § 245, 62 Stat. 1076 (1948). Its original name, Panama Railroad Company, was changed in 1950 to Panama Canal Company. § 2(a), 64 Stat. 1038 (1950).

5. S.Rep. No. 1441, 80th Cong., 2d Sess. 1 (1948).

6. Panama Railroad Company Act § 250, 62 Stat. 1079 (1948), 2 C.Z.C. § 67 (1962).

7. R. F. C. v. J. G. Menihan Corp., 312 U.S. 81, 84 (1941).

8. Cf. Keifer & Keifer v. R. F. C., 306 U.S. 381, 389 (1939).

9. Keifer & Keifer v. R. F. C., 306 U.S. 381, 391 (1939).

name," [10] a provision which the Supreme Court has stated normally embraces all civil process incident to the commencement, continuance and furtherance of legal proceedings,[11] and is to be liberally construed as a waiver of immunity from suit.[12] Restrictions upon the scope of the "sue and be sued" clause are not lightly to be implied.[13] The defendant, however, contends that the broad declaration of suability contained in the 1948 Act is restricted by other provisions of the Canal Zone Code.[14] Sections 291–96 of that Act contain specific authorization for suits against the Company in the District Court of the Canal Zone for personal injuries arising out of accidents occurring within the locks of the Canal or in the waters of the Canal Zone. No reference is made to claims for personal injuries arising outside the locks of the Canal or the waters of the Canal Zone. The defendant argues that the "sue and be sued" clause refers only to the claims enumerated in Sections 291–96 of the Canal Zone Code; applying the maxim "inclusio unius est exclusio alterius," it contends that all claims for personal injuries occurring outside the locks of the Canal or outside the waters of the Canal Zone are immunized from suit.

The fallacy of this contention readily appears. The sections in question refer to claims for "injuries to * * * crew, or passengers of vessels" occurring with-

in the locks or Canal Zone area. No logical or historical reason appears why Congress would permit the Company to be sued in the instance of crew or passengers of vessels injured within the Canal Zone area and would immunize it from suit in the instance of persons injured as a consequence of its commercial activities outside the area. Gardner v. Panama Railroad Co.[15] negates the alleged preferential concept. There a passenger sued in the District Court of the Canal Zone to recover damages for injuries allegedly sustained aboard the defendant's vessel. The claimed injury occurred within three hours after the vessel had sailed from New York enroute to Cristobal.[16] Since the accident did not occur within the locks of the Canal or in the waters of the Canal Zone, Sections 291 through 296 of the Canal Zone Code were inapplicable.[17] The Company was held subject to suit. It is true that the Court did not directly discuss the question of sovereign immunity but considered only the issues of laches and statute of limitations; however, the Court, by its holding, implicitly recognized that the defendant was amenable to suit other than in accordance with the express provisions of the Canal Zone Code, since if the Company were not subject to jurisdiction, it would have been duty bound on its own motion to dismiss the action upon that ground.[18] Sections 291 through 296 may

---

10. Panama Railroad Company Act, § 248 (d), 2 C.Z.C. § 65(a)(3) (1962).

11. R. F. C. v. J. G. Menihan Corp., 312 U.S. 81, 85 (1941).

12. R. F. C. v. J. G. Menihan Corp., 312 U.S. 81, 84 (1941).

13. F. H. A. v. Burr, 309 U.S. 242, 245 (1940).

14. C.Z.C. (1962).

15. 342 U.S. 29 (1951).

16. Gardner v. Panama Canal Co., 115 F. Supp. 687, 689 (D.C.Z.1953).

17. Sections 291 through 296 were originally passed in 1950. See § 3, 64 Stat. 1039–40 (1950).

18. Minnesota v. Hitchcock, 185 U.S. 373 (1902); United States v. New York, N. H. & H. R. R., 276 F.2d 525, 544 (2d Cir.),

cert. denied, 362 U.S. 961 (1960). Azrak v. Panama Canal Co., 117 F.Supp. 334 (S.D.N.Y. 1953) arose while the same law in effect at the time of the Gardner decision was in force. The plaintiff, a passenger on one of the Canal Company's ships, claimed that because of defective lighting on board, she sustained permanent injuries. The defendant moved for summary judgment, pointing out that according to the terms of the contract of passage, suit was brought too late. In denying the motion, Sugarman, J., held that there was an issue as to whether the plaintiff had had notice of the terms of the contract. No discussion of the jurisdictional question was undertaken. Thus, as in Gardner, jurisdiction was implicitly found.

Prior to the passage of § 3, 64 Stat. 1039–40 (1950), which expressly made

limit the forum in which certain actions may be brought against the defendant; they do not preclude suit in the instant case.

The defendant professes to find support for its contention that Congress did not intend to waive sovereign immunity for the Company in an amendment to the Federal Tort Claims Act [19] which makes the Act inapplicable to claims arising from the activities of the Canal Company.[20] The legislative history of the exemption provision rebuts rather than supports the defendant's position. In 1948, when Congress enacted the Tort Claims Act, claims arising from injuries to vessels, cargo, crew or passengers of vessels while passing through the locks of the Panama Canal or while in the Canal Zone waters were expressly excluded and the procedures of the Act made inapplicable with respect thereto.[21] The Act made no reference to other claims against the Company. However, in 1949 it was amended to exclude, in addition, "any claim arising from the activities of the Panama Railroad Company." [22]

The reason for the enactment of the amendment establishes beyond peradventure that the Congress neither conferred nor intended to confer immunity upon the defendant for claims such as here asserted, but on the contrary fully recognized that the Company had always been and continued to remain suable. The Committee Report first noted that the

definition of "Federal Agency" in the Tort Claims Act was so broad as to include the Panama Railroad Company.[23] It then stated that the Company's various activities "are not those to which the principle of governmental immunity to suit should be applied. * * * Before the enactment of the Federal Tort Claims Act, the Company was subject to suit on all claims, tort as well as contract, in the same manner as any private corporation. As a ship operator, it was subject to suit in the same manner as any shipping company, and was expressly excluded from the Suits in Admiralty Act." [24] Accordingly, the House Committee on the Judiciary, as well as the Department of the Army which originated the bill, considered that the procedures of the Federal Tort Claims Act were inappropriate to the Panama Canal Company [25] and recommended the amendment to confirm the suability of the Company in the ordinary course as in the past. In proposing the amendment, the Secretary of the Army stated:

"Since it is engaged in business as a common carrier and in other commercial enterprises, the basic policies underlying governmental immunity from suit do not apply to the Company, and it is desirable if not essential to continue unimpaired the ability of the Company to effect prompt settlement of meritorious claims and the amenability of the

the Canal Company suable in the District Court of the Canal Zone, the Panama Railroad Company had been sued in tort on numerous occasions in this Circuit. In all these cases, jurisdiction was taken for granted. See, e. g., Thunberg v. Panama R. R., 139 F.2d 567 (2d Cir., 1943) ; W. R. Grace Co. v. Panama R. R., 285 F. 718 (2d Cir., 1922) ; Pacific Mail S. S. Co. v. Panama R. R., 251 Fed. 449 (2d Cir.), cert. denied, 248 U.S. 567 (1918) ; and Napier Shipping Co. v. Panama R. R., 50 Fed. 557 (2d Cir., 1892), rev'd on other grounds, 166 U.S. 280 (1897).

19. 28 U.S.C. §§ 1346, 2671 et seq. (1958).

20. 28 U.S.C. § 2680(m) (1958).

21. 28 U.S.C. § 2680(g) (1958).

22. 28 U.S.C. § 2680(m) (1958).

23. H.R.Rep. No. 830, 81st Cong., 1st Sess. 1 (1949), 2 U.S. Code Congressional Service 1589 (1949).

24. Ibid.

25. H.R.Rep. No. 830, 81st Cong., 1st Sess. 1, 2 (1949) ; Letter from Kenneth C. Royall, Secretary of the Army, to The Honorable Emanuel Celler, Chairman of the House Committee on the Judiciary, reprinted in the 2 U.S. Cong. Serv. 1590–92 (1949). Under 28 U.S.C. § 2679 (1958), actions cognizable under the Tort Claims Act cannot be maintained in any other way.

Company to suit in the ordinary course." [26]

As claims arising from injuries occurring in the locks or waters of the Canal were already excluded from coverage under the Tort Claims Act, it is clear that the claims under discussion in 1949 included the type presently before the Court.

The defendant's further contention that Mills v. Panama Canal Co.[27] supports its position is also without merit. That case held that the exclusive remedy of a crew member employed by a defendant who was injured aboard ship while in the Canal Zone was under the provisions of the Federal Employees' Compensation Act. The plaintiff here was not a crew member or an employee of the defendant.

■ Since the Court concludes that the Panama Canal Company is subject to jurisdiction on the claim here asserted, we next consider the question of damages which was left open at the conclusion of the trial.

■ There is the not unusual conflict as to the nature, extent and permanency of the plaintiff's injuries. The cat's paw which struck the plaintiff was thrown from the deck of the vessel to the dock, a distance of thirty or more feet. It was of heavy knotted rope, shaped like a baseball, about two inches in diameter and weighed about a pound and a half. Plaintiff was struck on the head and neck and lost consciousness for a few minutes. He sustained a cerebral concussion and a one and a half inch laceration of the scalp which required two sutures. He was hospitalized for two and a half days, and upon his discharge was found in apparent good condition. While the scalp injury healed in due course, plaintiff suffered a cervical sprain of the neck. He was given a muscle relaxant to relax the muscles of his neck.

Part of plaintiff's treatment included traction, as well as home physiotherapy.

The doctors on each side agree the plaintiff had a pre-existing cervical osteoarthritic condition which was aggravated by the accident. However, a doctor called by the plaintiff, who examined him on three occasions within a month after the accident, was of the view that he would be able to resume his work shortly thereafter. This doctor's diagnosis also included a whiplash injury, a post traumatic anxiety reaction and a tetanus reaction which followed a tetanus injection. A doctor called by the defendant acknowledged that plaintiff had some restricted range of neck motion, but disputed that this was due to the accident; he was of the view that it was independently attributable to the pre-existing arthritic condition.

Plaintiff himself claims that from the time of the accident he has suffered from dizziness and has experienced difficulty in moving his neck; that this condition has precluded him from working. He testified that about six months after the accident he returned to work but was unable to carry on because of dizzy spells and neck restriction. Plaintiff, who was sixty-five years of age at the time of the accident, in effect claims permanent disability due to the injuries caused by the accident. Medical testimony offered by the defendant challenged plaintiff's subjective complaints of dizziness as attributable to the accident.

The Court concludes that plaintiff has not carried his burden of proof that as a result of the accident he sustained a disabling whiplash injury. The Court also is persuaded that plaintiff's abstention from gainful employment from October, 1960 is not the result of his accident or injury. Accordingly, for the nature and extent of the injuries proximately caused by the accident and the pain and suffering attributable thereto, and any likely

26. Letter from Kenneth C. Royall, Secretary of the Army, to The Honorable Emanuel Celler, Chairman of the House Committee on the Judiciary, supra at 1592.

27. 272 F.2d 37 (2d Cir., 1959), cert. denied, 362 U.S. 961 (1960).

936

future pain, the Court awards the sum of $3,500; for loss of wages for a period of six months, the sum of $2,000 (based upon his average earnings of $4002 for the year 1959) and $170 for doctors' and hospital bills—a total of $5,670.

The defendant seeks a diminution of this award based upon plaintiff's alleged contributory negligence. However, the Court found upon the conclusion of the trial that while customarily longshore-men working the ship are afforded an opportunity to get to a point of safety before the cat's paw thrown from the vessel hits the dock, the plaintiff here was not afforded such an opportunity. Accordingly, there is no basis for reduction of the award.