## KITSAP COUNTY TRANSP. CO. v. HARVEY.

(Circuit Court of Appeals, Ninth Circuit. October 25, 1926.)

No. 4889.

**1. Carriers ⬥288.**

Mere fact that conditions maintained by carrier present measure of peril does not necessarily import negligence.

**2. Carriers ⬥280(1).**

Common carrier is *held* to a high degree of care, but is not insurer.

**3. Shipping ⬥166(1).**

Carrier *held* to have failed to exercise requisite high degree of care in maintaining in women's cabin on steamship platform with seats for passengers raised ten inches above aisle.

**4. Carriers ⬥288.**

That standard of construction is fairly prevalent is not conclusive as to carrier's negligence in maintaining it, since use of standard unreasonably dangerous may constitute negligence.

**5. Shipping ⬥166(3).**

Aged woman, who was injured by fall from raised platform when leaving her seat on steamship, *held* not guilty of contributory negligence, because of knowledge acquired of such raised platform at time of entering seat.

**6. Evidence ⬥14.**

It is matter of common knowledge that people in moments of forgetfulness trip over unusual obstacles on floor with which they are familiar.

**7. Shipping ⬥203.**

Comp. St. § 8021, authorizing limitation of liability of owner of vessel, are to be given a liberal construction.

**8. Shipping ⬥207.**

Action against vessel by passenger for injuries received in fall from raised platform *held* proper case for limitation of liability, under Comp. St. § 8021, in view of evidence on question of negligence.

**9. Damages ⬥130(2).**

$4,000 *held* reasonable allowance for injuries to aged woman in fall from raised platform on steamship, resulting in fractured wrist and thigh bone.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; George H. Bourquin, Judge.

Proceeding by the Kitsap County Transportation Company, owner of the gas screw Suquamish, her tackle, apparel, and furniture, for limitation of liability in action brought in state court against it by Ella J. Harvey. Judgment dismissing proceeding, and petitioner appeals. Reversed, with directions.

Byers & Byers and John A. Homer, all of Seattle, Wash., for appellant.

Winter S. Martin, Herman S. Frye, and Clarence L. Reames, all of Seattle, Wash., for appellee.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

DIETRICH, District Judge. Appellee fell and was severely injured while being carried as a passenger on appellant's vessel Suquamish, which was engaged in the carriage of passengers on Puget Sound. To recover damages she brought an action in a state court, whereupon the defendant therein, appellant here, brought this proceeding in limitation of its liability, under the provisions of section 4283, R. S. (section 8021, Comp. Stat.), which in substance is as follows: "The liability of the owner of any vessel * * * for any loss, damage or injury * * * done, occasioned, or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending." Upon appropriate pleadings of the usual character, evidence was introduced in respect to all issues, including the question whether the accident was the result of any negligence upon the part of appellant, whether it had privity and knowledge in respect thereto, and also upon the question of appellee's contributory negligence.

The court below, having concluded that the conditions conducing to the accident pertained to the hull and were obvious, dismissed the proceeding without finding upon the question of negligence, on the theory that, privity and knowledge appearing, it was unnecessary to inquire further. Appellant assigns as error the refusal to find up-

on the issue of negligence, and generally the dismissal of the proceeding.

The accident happened in this way: The vessel is of 75 tons gross, having a capacity of 146 passengers. Below the deck is the women's cabin, through the center of which, fore and aft, is an aisle about 4 feet wide. On either side of the aisle is a platform or raised floor, 4 feet in width and extending from the aisle to the side of the vessel, and about 10 inches higher than the floor of the aisle. On these platforms the seats are arranged, two on either side of the aisle, in lines transverse thereto and facing forward. The seats are of the type commonly called theater seats, with stationary arms and upturning bottoms. From back to back they stand 19 inches apart, and those next to the aisle are nearly flush with the edges of the platforms. Apparently in getting into and out of a seat it would be necessary for the passenger to move sidewise.

Upon arriving at her destination, appellee, who was occupying one of the aisle seats, arose to leave the boat, and, apparently forgetful of the fact that she was on an elevation, she stepped out sidewise as upon an unbroken floor, lost her balance, and, falling, fractured her wrist and thigh bone. She was 73 years of age, and was wearing a coat reaching to within about 4 inches of the floor. She resided in the East, and was on a visit in Seattle. She had ridden on boats with unbroken floors, but never upon one with raised platforms. There were no cautionary signs in the cabin, or attendants to give warning.

That the conditions described entailed a measure of peril is not to be doubted. The floor of a single room or other structural unit is usually on an unbroken plane. A stairway or series of steps leading from one level to another furnishes no analogy; in such cases there is usually something in the structure to arrest the attention. Aisles in churches, theaters and other public places, and in street cars and railroad cars, are generally on the same plane with other parts of the floor; and that, we venture to say, is generally true of cabin floors of passenger vessels. The danger from a platform 10 inches high is probably greater than from one substantially higher or substantially lower. If a passenger were under the necessity of ascending two or three steps, she would be less likely to forget their existence, and if the elevation were only 4 or 5 inches she would be less likely to fall if without thought she stepped from it.

[1, 2] The mere fact that the conditions presented a measure of peril does not, however, necessarily import negligence. There is always some possibility of accident in any structure. A common carrier is to be held to a high degree of care, but is not an insurer. If a form of structure is unavoidable or reasonably necessary, its maintenance does not constitute negligence, though attended with a measure of danger.

[3] Appellant puts forward, as reasons for maintaining the raised platforms, that by so elevating them space is provided sufficient to receive two seats, and when seated the passengers can look out of the windows, and as a reason why the aisle floor is not carried on the same level, that by keeping it down there is greater head room, and further, as a reason for not getting head room by carrying the ceiling or the deck higher, that it is desirable to keep the center of gravity down. We are not convinced of the validity of these reasons, considered either separately or together. True, because of the slant in the sides of the vessel the lowering of the platform would slightly reduce the total width of the floor space, but it would seem to be clear from the photograph in evidence, and the testimony that, if the floor were thus carried in an unbroken plane, the slight loss of space thus entailed could, without serious inconvenience, be compensated by a corresponding narrowing of the aisle, or the platforms could be left as they are and the aisle floor brought up to their level. Certainly the raising of the aisle floor, which is directly above the keel, 10 inches, would not seriously affect the center of gravity, and we see no reason why the head room over the aisle should exceed that over the platforms, unless it is expected that passengers shall not stand erect in getting in or out of the seats, and there is no such contention, or an unbroken floor could be accomplished by raising the aisle a few inches and lowering the platforms a like distance.

[4] Upon the whole, we are of the opinion that in maintaining such a floor, with the added circumstance that there were no warning signs or attendants to caution passengers, the appellant failed to exercise that high degree of care required of carriers. There are in the record some general expressions to the effect that the construction is standard, but upon cross-examination of the witnesses making such general statements it was made to appear that they knew of only a few specific instances, practically all, if not all, of which were on the Puget Sound. We are aware of no reason why boats on

Puget Sound should be different from boats on other waters. But even were it conceded that such a standard of construction is fairly prevalent it would not be conclusive. The use of a standard unreasonably dangerous may constitute negligence.

[5, 6] Nor do we think the appellee is chargeable with contributory negligence. When she entered her seat she of course learned of the raised platform, but she is subject to the rule only of ordinary care. If we apply to her the standard of what ordinarily careful women of her age and experience would do under like circumstances, how can we conclude that she was careless? It may well be that, while she had learned of the platform, she never realized that, if she moved her foot sidewise but a few inches, as she arose to leave her seat, she would step off into space. But, aside from that consideration, if in a moment of forgetfulness, with her aged mind intent upon disembarking, she did what otherwise she would not have done, she is not for that reason necessarily subject to a charge of carelessness. It is a familiar principle that one is not necessarily guilty of negligence who in a moment of forgetfulness is injured by reason of a defect in a sidewalk or a street or other public place, though he had knowledge of its existence. 37 Cyc. 298. That people do in forgetfulness trip over unusual obstacles upon a floor, with which they are familiar, or stumble over unusual steps under like circumstances, is a matter of common knowledge.

[7, 8] It remains to consider whether this is a proper case for the limitation of liability. It is a settled rule that the statutory provisions under which the proceeding is brought are to be given a liberal construction, and it has been repeatedly held that the phrase "privity and knowledge," as used in the statutes, means something more than mere negligence.

"Mere negligence, pure and simple, in and of itself, does not necessarily establish the existence on the part of the owner of the vessel of privity and knowledge within the meaning of the statute." LaBourgogne, 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973.

"There must be personal participation in the act of delinquency or omission leading to the loss." The Indrapura (D. C.) 171 F. 929.

"It is sufficient if the corporation employ, in good faith, a competent person to make such inspection [boiler]. When it has employed such a person in good faith, and has delegated to him that branch of its duty,

its liability beyond the value of the vessel and freight ceases." The Annie Faxon, 75 F. 312, 21 C. C. A. 366.

And in Boston M. I. Co. v. Metropolitan, 197 F. 703, 117 C. C. A. 97, this court has said: "But we cannot concede that an owner of a vessel, in order to be entitled to limit his liability under the statutes, must, before sending his vessel on her way, acquaint himself with the science of navigation, or acquire expert knowledge concerning his vessel, its equipment, its machinery, or the necessary crew therefor, or must place between himself and the master an intermediary who shall possess such knowledge, and our attention has been directed to no authority which so holds."

We do not attempt to review the numerous cases involving various phases of the subject; many of them are collated in the Canadian Pac. Ry. Co. Case (D. C.) 278 F. 180 et seq. While no one of them involves the precise question, we think the principles they enunciate are sufficiently comprehensive to be applicable here. We hold the plaintiff wanting in the high degree of care required of passenger carriers, but there is no evidence of bad faith or willfulness. The design of the vessel is not without the approval of some competent authority, and upon the whole the question of negligence is a debatable one. Accordingly we hold it a proper case for the limitation of liability. [9] Upon the question of damages, we think $4,000 will be a reasonable allowance. Accordingly the judgment of dismissal is reversed, with direction to the lower court to enter a decree for appellee, in appropriate form, for $4,000.