## AMERICAN–HAWAIIAN S. S. CO. v. PACIFIC S. S. CO.

## THE ADMIRAL FISKE.

## MAILLIARD & SCHMIEDELL et al. v. SAME.

## PACIFIC S. S. CO. v. AMERICAN–HAWAIIAN S. S. CO. et al.

### No. 5960.

Circuit Court of Appeals, Ninth Circuit.
June 2, 1930.
Rehearing Denied July 14, 1930.

Lawrence Bogle, of Seattle, Wash., and Louis T. Hengstler and Frederick W. Dorr, both of San Francisco, Cal., for appellant American-Hawaiian S. S. Co.

Howard G. Cosgrove, of Seattle, Wash., for appellants Schmiedell et al.

Hugh Montgomery and E. C. Kester, both of San Francisco, Cal., and John Ambler, of Seattle, Wash., for appellee and cross-appellant Pacific S. S. Co.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

KERRIGAN, District Judge.

These are appeals and cross-appeal from an interlocutory decree granting the petition of Pacific Steamship Company, as owners of the steamship Admiral Fiske, for limitation of liability with respect to claims arising out of a collision between the Admiral Fiske and the Steamship Floridian, but denying exemption from all liability for the collision. The collision occurred in dense fog at about 10:30 p. m. on September 1, 1928, about 35 miles south of Umatilla Lightship near the Straits of Juan de Fuca, Wash.

The record shows that the Admiral Fiske was being navigated at an excessive speed in the fog. The Pacific Steamship Company bases its cross-appeal upon the theory that, despite the evidence as to such speed, this was not the proximate cause of the accident, but that the sole cause of collision was the vacillating maneuvers of the Floridian after the vessels had sighted each other. Detailed discussion of the evidence in this regard is unnecessary, as the finding of fault on the part of the Admiral Fiske by the court below is amply supported by evidence from which the conclusion as to the causal connection between the fault and the collision may be fairly drawn.

Claimants, in their appeal from that portion of the decree which permits the Pacific Steamship Company to limit its liability, assert that the company failed to use due diligence to make the Admiral Fiske safe at sea, in that unsafe and insufficient deck watches were maintained with the privity and knowledge of the company. The Seamen's Act of 1915, § 2 (38 Stat. 1164, 46 USCA § 673) provides: "In all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, bays, or sounds exclusively, the sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and water tenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel. * * * Whenever the master of any vessel shall fail to comply with this section, the seamen shall be entitled to discharge from such vessel and to receive the wages earned."

From the time of its enactment to 1926, the practical construction of this section acted upon by the masters of steamships was that it required only those members of the crew engaged in the actual navigation of the vessel to be divided into watches on duty successively, and permitted those engaged in her maintenance, i. e., carpenters, deck hands, etc., to be assigned to a single day watch. In 1926, the Supreme Court of the United States held, in O'Hara v. Luckenbach Steamship Co., 269 U. S. 364, 46 S. Ct. 157, 70 L. Ed. 313, that all the sailors must be divided into watches as nearly equal to each other numerically as the whole number will permit. In March, 1927, the supervising inspector of the Steamboat Inspection Service sent a letter to the local inspectors of the various districts,

requesting that they notify the steamship companies of this decision and its effect. Such a letter was received by the general agent of the Pacific Steamship Company at Portland, April 21, 1927. On April 22, 1927, he sent notices to the masters of the four vessels of the company operating out of Portland, including the Admiral Fiske, N. A. Sohst, master, inclosing a copy of the inspector's letter. This notice was added to the general files of instructions on the Admiral Fiske, and A. D. Tibbetts, master of the vessel at the time of the collision, testified that he saw it there when he took command in June, 1928.

The Admiral Fiske carried six able seamen, two ordinary seamen, one carpenter, and one boatswain. At the time of the collision the able seamen were divided into three watches, a lookout and a man at the wheel for each watch, and the remaining men were assigned to a day watch from 8 a. m. to 5 p. m. The only difference between this division of the crew and that which had been customary since 1915 was that only able seamen were assigned to watches, the ordinary seamen not being intrusted with lookout or wheel duty.

The Pacific Steamship Company does not seriously attempt to defend the division of the crew in this manner, but asserts that it was the act of the master, as to which the company was without knowledge or privity. In support of this contention, the president and the vice president in charge of the operating of the company testified that they did not know that the watches on the Admiral Fiske were not being divided according to the law as declared in the O'Hara Case, supra. They testified as to the general instruction given to all of their captains to obey without deviation all laws of the United States and rules and regulations of the Board of Supervising Inspectors, and as to the specific notification contained in the circular of April 22, 1927, with reference to the division of watches.

 By virtue of his office and the rules of maritime law, it is the master's duty to select and station his crew. Butler v. Steamship Co., 130 U. S. 527, 9 S. Ct. 612, 32 L. Ed. 1017; The George W. Roby (C. C. A.) 111 F. 601. The statute regarding the division of the crew into watches, quoted above, itself contemplates that such division shall be made by the master, stating, "Whenever the master of any vessel shall fail to comply with this section, the seamen shall be entitled to discharge from such vessel, etc." The duty of complying with this statute was properly del-

egated to the master of the Admiral Fiske, under proper instructions from the company, and the company is not to be held blameworthy for failure to interfere with the division of watches actually made unless it is shown that it was apparent to those in authority that the instructions were not being complied with and that disciplinary measures were required.

On the question of the knowledge and privity of the Pacific Steamship Company, the situation presented by this record closely parallels that before the Supreme Court in the case of La Bourgogne, 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973. In that case the master violated the international rules with regard to navigation in foggy weather. The owners offered, as evidence of their lack of knowledge or privity, a circular sent to the captains of their vessels setting forth these rules and calling for compliance therewith. The claimants sought to establish knowledge on the part of the owners of constant prior violations of these rules over a period of at least two years. The Supreme Court held that there was no error in the finding of the trial court that the owners of La Bourgogne were entitled to limit their liability, saying: "The petitioner having shown the promulgation of regulations for the conduct of its business, which exacted a compliance by the captains of its vessels with the international rules, we think the burden of proving that the rules were not promulgated in good faith or that a wilful departure from their requirements was indulged in, and was brought home to, or countenanced by, the petitioner, was cast upon the claimants, and that the court properly held that that burden was not sustained by the evidence." Page 126 of 210 U. S., 28 S. Ct. 664, 675, 52 L. Ed. 973.

 The provisions of the statute permitting limitation of liability are to be liberally construed. Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 3 S. Ct. 379, 617, 27 L. Ed. 1038. And where the owner of a vessel has properly delegated duties with respect to her management to a competent person, and there is here no contention that the master of the Admiral Fiske was not competent, something more is required in establishing knowledge and privity as to violations of statutes or regulations than mere negligence as to discovering whether or not those duties have been properly carried out; some degree of actual knowledge or participation must be brought home to the owners. La Bourgogne, supra; The Annie Faxon (C. C. A.) 75 F. 312; Kitsap County Transporta-

tion Co. v. Harvey (C. C. A.) 15 F.(2d) 166, 48 A. L. R. 1420; Petition of Canadian Pacific Railway Co. (D. C.) 278 F. 180, 181.

The executive heads of the Pacific Steamship Company testified as to their lack of knowledge of any violation of the provisions of the Seamen's Act of 1915, § 2 (46 USCA § 673). The mere lapse of time between the giving of instructions as to division of watches and the collision, and the few statements adduced on cross-examination of witnesses for the company, from which it might be surmised that the operating managers of the company at San Francisco and Seattle had some information as to the method of dividing the watches on the Admiral Fiske, are not of such probative force as to require us to hold the trial court in error in finding that knowledge of the improper division of watches was not brought home to the company.

The decree appealed from is affirmed.