## In re JACOBSON.
### No. 1409.

District Court, S. D. Texas, Galveston.
July 28, 1931.

W. E. Price and Harris & Watkins, all of Galveston, Tex., for claimants.

Lockhart, Hughes & Lockhart, of Galveston, Tex., for petitioner.

HUTCHESON, Circuit Judge.

Suits at law having been filed against John Jacobson as owner of the gas towboat Edward and the barge Port Lavaca for damages for the deaths of McKelvain and Clark, caused, as alleged, by the negligence and fault of the defendant, Jacobson filed this petition. A trustee and a commissioner were appointed and time for filing claims was fixed. No other suits or claims than for the decedents have been filed.

On the morning of December 19, 1929, in the tail of a heavy norther which, blowing fiercely for two days, had caused storm warnings to go up, and had brought bitterly inclement weather for this port, a frail gas towboat, the Edward, having the barge Port Lavaca in tow, put out into a gulf running heavy seas on a voyage to Corpus Christi.

Hard put to it to sustain, almost certainly unequal to the hazards of such a voyage, the Edward would have been had she been properly manned and adequately

equipped and provided, and it would have been an act of negligence even under those circumstances to trust so frail a shell to such a sea. When, in addition, there is taken into account the patchwork character of her outfitting, the misfit character of her crew, engineer become master, electrician engineer, the deck hand a medical student of seventeen without experience in or capacity for the work of the sea, a case of negligent preparation for the voyage is so plainly made to appear as to compel the inference that the stranding of the boat and the freezing to death of her crew were the direct and proximate result of the unseaworthiness of the boat, its complete unfitness for the voyage undertaken. Unless then petitioner has sustained the burden which the law places heavily upon him to show that the unseaworthiness which caused the loss was without his privity or fault, plaintiffs are entitled to judgment against him.

As to equipment and crew, petitioner seeks to sustain the burden by proof that he had authorized and directed Newport, who on the fatal trip went as master, to take the tug Edward and put her in first-class condition as to her equipment and provide a suitable crew; that while he had not, of course, himself installed, supervised, or inspected the equipment put upon the boat or engaged the crew, he had given Newport orders that everything proper should be done, and that, if anything was left undone that ought to have been done, or done that ought not to have been done, this was not his fault, but the fault of Newport, the master.

As to leaving port in bitterly freezing weather in the wake of a storm, he declares that, if this was an error of judgment, it was the fault of his agent, Sweeney, and of the master in charge of the boat, and not of himself, since on the day the Edward battled her way out into the Gulf he was not in the port of Galveston.

Claimants urge against these contentions that this case could in no event be one for limitation of damages; that it is indeed a case which in its very nature defeats and rebuts such relief.

I agree entirely with claimants. I think the slightest consideration of the purpose and the language of the act in the light of the facts which this record discloses makes it plain that petitioner had wholly failed to make proof from which it could be at all fairly found that the conditions which brought about the death of the crew were without his privity or fault.

■ The statute invoked (46 USCA § 183) rests upon a sound public policy. "The great object of the law was to encourage shipbuilding and to induce capitalists to invest money in this branch of industry." Norwich v. Wright, 13 Wall. 104, 121, 20 L. Ed. 585; U. S. v. Hamburg (C. C. A.) 212 F. 40, 44, L. R. A. 1917C, 1103; Christopher v. Grueby (C. C. A.) 40 F.(2d) 8. This the law accomplishes when it enables persons to go into the business of owning and sailing ships with the assurance that, if they make their vessels seaworthy, their risks shall be limited to what they have invested in the venture.

Limiting as it does the common-law doctrine of responsibility for the acts of servants and agents, this statute makes a very valuable concession, neither to be frittered away by undue restrictions upon it nor to be incontinently allowed except upon full compliance with the conditions of the grant. Cases like The Annie Faxon (C. C. A.) 75 F. 312; People's Navigation Co. v. Toxey (C. C. A.) 269 F. 793; Kitsap County v. Harvey (C. C. A.) 15 F.(2d) 166, 48 A. L. R. 1420, in their emphasis upon the difference between the personal and the imputed fault of the owner have tended to overemphasize the exemption from liability; other cases stressing the necessity for compliance with the conditions fixed as the basis for the enjoyment of the exemption have clarified, or at least brought into balance, some of the expressions in those cases. Cases of this kind are Great Lakes Towing Co. v. Mill Transportation Co. (C. C. A.) 155 F. 11, 20, 22 L. R. A. (N. S.) 769; Benner Line v. Pendleton (C. C. A.) 217 F. 497, 500; The Etna Maru (D. C.) 20 F.(2d) 143; Christopher v. Grueby (C. C. A.) 40 F.(2d) 8.

■ In the Grueby Case it is said on page 12: "The duty of ship owners to their seamen to see that their ship is seaworthy and her equipment in safe condition for use when she starts on a voyage is a personal one, responsibility for which they cannot escape by delegating its performance to another. In this respect it is like the common-law duty of a master to provide his servant a suitable place in which to work. And a seaman injured through failure to perform this duty is entitled to compensation."

With this statement of the law I fully agree. It is my opinion that those decisions are illogical which hold that, where an owner delegates the job of furnishing a seaworthy vessel to another, he may have limitation, but that, where he tries to make it seaworthy himself, he may not have.

Here, however, it is not material which view of the law be adopted, for under neither does petitioner show himself entitled to limitation. He certainly did not in person equip and provide the vessel properly, nor did he make provision to properly and adequately furnish her for the voyage.

The statutes of limitation are designed to protect shipowners who, in the business of sending ships down to sea, make them shipshape for the voyage. In a case like this, of an abandoned vessel of petitioner's picked up by Newport to be put into condition under a profit-sharing arrangement, by the terms of which Newport would pay for all such repairs as were necessary to fit her out sufficiently to make her voyages, it should take the clearest kind of proof that everything was done which was necessary to fit her out. Here Jacobson testified that he left to Newport the equipping of the vessel. Newport by the agreement was to pay the expenses of equipping her. Having no interest in the vessel after he had equipped her, and having small moneys to lay out, naturally Newport would equip her in as makeshift a manner as he could get by with, and he proceeded to do so, among other expedients borrowing from another one of Jacobson's boats an old engine, and, while the evidence does show that he arranged for an auxiliary engine, there is evidence that it never came aboard, and none to the contrary. Running out of funds, Newport appealed to Jacobson, who got his brother-in-law to do some caulking and furnished some funds for the work. A Delco lighting system, according to the evidence, was put on the boat just before her departure, but it had not been connected up, and there is no evidence as to whether it ever was connected.

There is testimony from one Morrell, who had made one trip on the boat and had intended to make the Corpus Christi trip, of many defects and deficiencies in its equipment; that the engine was too strong for her and caused her to leak; that, if the engine had stopped, there were no means provided on the boat to start her again; that so desperate and dangerous did the venture appear to him that he refused to go, and begged the others not to.

This testimony was characterized by extremeness in overstatement, and its truth was attacked by suggestions of his drinking, and of his hostility to petitioner, he having been discharged by him, but, taken in connection with the other facts in the case, which tend in part to support it, it compels the conclusion that there was a makeshift arrangement carried out in a makeshift way, and that a boat equipped and fitted as the Edward was was in no sense seaworthy for the voyage undertaken. If an owner desires to take ventures such as this one was, of course he has a right to do so, but he has no right, when loss to persons or property occurs, to claim the benefits of an act the purpose of which was to encourage the building and equipping of first-class merchant ships, adapted to and well provided for the purpose for which they are to be used.

The purpose of the act to encourage shipowners to send good ships to sea is defeated if it is allowed to furnish protection to owners from the consequences of an illy advised and illy considered venture of this kind.

In addition to the unseaworthiness in the equipment and furnishings of this vessel, I think it perfectly plain that petitioner is responsible for having the ship put out to sea in the face of the inclement weather ruling on that day. He had arranged for the trip; he had emphasized the urgency of the departure which had been delayed because of the repairs made on the barge. He was in Galveston when the storm warnings were put out. He talked to Newport the day before in Galveston about the voyage, knowing he was to leave next day; he had given strict orders for him to leave as soon as the barge was ready; and, knowing that he was to leave, talking with him on the day before he left, petitioner left Galveston leaving no orders, as he should have done in view of the condition of the boat, directing Newport to wait until the storm had subsided. Under these facts, the case stands as though he were in Galveston on the morning that she sailed, and fully responsible for the sailing. Texas & Gulf Steamship Co. v. Clarence Parker (C. C. A.) 263 F. 864.

Let a decree be drawn denying limitation, establishing liability, and directing the commissioner to hear and pass upon the claims.