## HENSON v. FIDELITY & COLUMBIA TRUST CO.

### No. 6357.

Circuit Court of Appeals, Sixth Circuit.
March 9, 1934.

For former opinion, see 68 F.(2d) 144, which affirmed opinion in 3 F. Supp. 950.

Ernest Woodward, of Louisville, Ky. (Odie Duncan and B. S. Morris, both of Henderson, Ky., and Woodward, Hamilton & Hobson, of Louisville, Ky., on the brief), for appellant.

J. C. Worsham, of Henderson, Ky. (Worsham & King, of Henderson, Ky., on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The petition for rehearing and its accompanying brief indicate a misunderstanding of the rationale of our decision announced December 15, 1933. 68 F.(2d) 144. The reasoning of the opinion is not to be construed as based upon the failure of the appellant to test his equipment by a method which has no support in scientific theory or actual practice.

The holding that the appellant was negligent, and that the negligence was so clearly his own that no want of knowledge or privity can be recognized,[1] was based upon his use of an appliance whose integrity, while ascertainable, was not ascertained, either scientifically or by the simpler expedients known to practical men. We expressed no opinion of the acid and microscope test as a means for discovering imperfect welding invisible to the naked eye. The appellant himself suggested the test, and the persistence of its theoretical efficacy is curiously demonstrated by the case relied upon (The Drummond (D. C.) 114 F. 976), where it is without qualification asserted. Our reference to his failure to apply even such simple tests as were within his knowledge, just as our reference to his failure to make any inquiry at all as to approved methods of testing, but emphasized the extent of his neglect, and cannot, we think, with reason, be interpreted as setting up an arbitrary standard of care which may or may not have basis in sound scientific theory or demonstrated practice.

Nor were our fact assumptions, however ineptly phrased, unwarranted by the record. The quoted excerpts therefrom but demonstrate the more clearly that in the sense asserted in the opinion the artisan who fabricated appellant's appliance was not in the light of present knowledge an expert in the welding of heavy duty chains. We have progressed little in technical skill if the crude methods of a hundred years ago demonstrate expert fabrication in the light even of the common knowledge possessed by average men of the present day.

That the automobile is a dangerous instrumentality to those riding in it or meeting it on the highway was advanced doctrine when first announced by the New York Court of Appeals in MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, 1053, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440, in 1916. So persuasive was the logic of that case that the doctrine was three years later approved by the United States Circuit Court of Appeals of the Second Circuit in Johnson v. Cadillac Motor Car Co., 261 F. 878, 8 A. L. R. 1023, even though in following the New York court the United States court was compelled to reverse its own ruling in the same case, 221 F. 801, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581, and support its holding upon an exception to the rule of stare decisis. By 1930, this court, speaking through Judge Denison, in Goullon v. Ford Motor Co., 44 F.(2d) 310, was able to announce that the rule had been so repeatedly followed that it had become the generally accepted law.

We cite these cases not because the issues are identical with those here involved,

---

[1] For approval of District Court's opinion and exhaustive citation of cases, see 32 Michigan Law Review 543.

but because the reasoning there followed is of great aid in reaching a sound and a just conclusion here. The generally recognized danger inherent in the great speed and power of the motorcar, when compared with older instrumentalities of transportation which there forced itself upon the courts, must point the way to a recognition of the increased hazards in disembarking a heavy and powerful motortruck under its own power from the relatively unstable platform of a floating barge, and appliances considered adequate in similar situations with respect to horse-drawn vehicles no longer respond to the legal requirements of care. As was said by Chief Judge Cardozo in the Buick Case, "Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be." Speaking of the requirement of inspection, he adds: "The obligation to inspect must vary with the nature of the thing to be inspected. The more probable the danger the greater the need of caution."

It ought to be unnecessary to repeat that the standard of care applied to the appellant was that applicable to a carrier for the safety of his passengers. Judge Lurton's opinion, speaking for this court in The Olympia, 61 F. 120, is cited to us on the measure of care required in discovering latent defects. It contains its own answer, and likewise ours. "The rule (as to degree of care) in maritime law does not differ from that at common law, where there is no contractual relation between the parties." Page 127. "A distinction exists between the liability of one in contractual relations to another as to the soundness and safety of machinery or appliances, as in the case of carrier and passenger, and the liability to a stranger." Page 128.

It is insisted that the appellant's appliance, if not otherwise tested, was sufficiently tested by use. There are cases which apparently so hold, though they are mainly cases in which the applicable standard of care was not that of a carrier to his passengers. If there is any authoritative holding that an appliance once safely used may without more be relied on for the safety of persons by those who owe them the highest degree of care, we decline to follow such holding. The test of use wholly eliminates from consideration the so-called safety factor so vital to the architectural and engineering sciences.

Through familiarity with complicated machinery, transportation instrumentalities, household appliances, and modern farm equipment, and through their advertising, representation, demonstration, and use, our stock of common knowledge has been so greatly increased that the need of liberal margins of safety in design, materials, and manufacture is now so generally understood that a rule which bases reliance upon an appliance which has not in a given situation failed, but leaves no demonstrated marginal safety factor when the situation substantially or even slightly changes, can no longer stand, even if ever it received sanction. In The Drummond, supra, the safety factor was not overlooked. The margin there was three or four to one.

If by the holding in Kitsap County Transportation Co. v. Harvey, 15 F.(2d) 166, 48 A. L. R. 1420 (C. C. A. 9), which is particularly urged upon us, is meant a holding that there can be no knowledge or privity within the meaning of the statute unless there is either bad faith or willfulness on the part of the vessel owner, then our opinion is in conflict with that case.

The petition for rehearing is denied.