## GARDNER v. PANAMA CANAL CO.
### No. 3097.

District Court, Canal Zone
Division Balboa.
April 24, 1953.

Van Siclen, Ramirez & de Castro, Ancon, Canal Zone, for libelant.

Paul Bentz, Paul Runnestrand, David Markun, J. M. Thomson, Balboa Heights, Canal Zone, and Victor Dobrin, Los Angeles, Cal., for respondent.

CROWE, District Judge.

As stated by the Supreme Court of the United States in its opinion of November 5, 1951, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31, this suit in admiralty, a libel in personam, is petitioner's third attempt to secure damages for personal injuries alleged to have been sustained while a passenger on respondent's steamship.

The first action was dismissed after the respondent had successfully maintained that the petitioner's only remedy was to sue the United States under the Tort Claims Act, as the respondent's entire stock is owned by the United States, and the second action was dismissed by the District Court before trial on its merits as Congress had amended the Federal Tort Claims Act, July 16, 1949, excluding from its coverage "any claim arising from the activities of the Panama Canal Company." 28 U.S.C.A. § 2680(m).

The case now under submission came before the Supreme Court on a writ of certiorari to the United States Court of Appeals for the Fifth Circuit on the question of laches. 341 U.S. 934, 71 S. Ct. 854, 95 L.Ed. 1363. The Canal Zone Code § 4–87, subd. 3, prescribes a one-year statute of limitations and the first two actions mentioned were filed within a year after the alleged injury.

Five days after the second action was dismissed this action was filed and the District Court and the Court of Appeals sustained the plea of respondent that as the one-year statute now barred any action at law, laches should bar any recovery in admiralty.

The Supreme Court reversed the decision of the Court of Appeals, 5 Cir., 185 F.2d 730, and the cause was remanded to this Court for further proceedings.

The present action was originally styled, Evelyn C. Gardner v. The Panama Railroad Company, but due to the reorganization of the affairs of the Panama Canal it became a part of the company and it was stipulated that the style be changed to Evelyn C. Gardner v. Panama Canal Company.

The libelant, on December 3, 1947, was a passenger on the S. S. Panama, a passenger steamship belonging to the respondent which operates as a common carrier of passengers and freight between Cristobal, Canal Zone, and New York City.

The ship pulled away from the dock at about 3:00 P.M. on the date in question and cleared the harbor and set upon its course at "roughly around five o'-clock." There were no heavy seas and there was a 3 force or ten mile an hour wind which was described by the master as "moderate".

Dinner was served at about 6:00 P.M. and after dinner the libelant returned to the stateroom to get some cards and went to the bathroom. She used the toilet and being unable to locate the flushing lever from a sitting position she stood to flush it. She assumed a position facing the toilet from its front with her right foot between the toilet bowl and a 5¾ inch coaming that surrounded the shower. As she was leaning over in a position to manipulate the flushing lever which was in back of the stool and on the same level as the seat, the ship gave a "very slight lurch" and she fell over into the shower which was on her right. Her right heel "struck the coaming" and she attempted to grasp the shower curtain but it was of slick fabric that was "impossible to grasp." The libelant fell on the lower part of her spine with such force that the back of her head hit the back of the shower.

The libelant testified and produced some supporting testimony that she received injury and she sues for damages in the sum of $17,653.12. It was stipulated between the parties and ordered by the Court that, in view of the extensive medical and other testimony neces-sary to the trial of the issue of damages, the issues of liability be tried separately and that matter is now before the Court for determination.

### Conclusions of Law

I. The first question to be determined is the one of injury and it is believed by the Court from the evidence that there was injury resulting from li-belant's fall on the respondent's ship. She admitted to a previous injury from falling in October or November that resulted in pain and stiffness and for which she received $200 in settlement. Respondent argues that this creates doubt as to actual injury in the bathroom fall but the Court is of the opinion that proof of this previous injury might be used in this case only to affect the extent of injuries received on respondent's ship, for although she alone testified as to the fall and pain, her testimony is uncontradicted and the fact of injury is corroborated by the testimony of copassenger, Robert Gibbs Rennie, and the ship's steward who described her absence from the dining saloon, her appearance of injury subsequent to the time of the alleged fall, and her need for assistance in walking.

II. The next question that addresses itself to the Court is the one of negligence and libelant's case is based upon (a) her lack of knowledge that the coaming was present because it was hidden by the shower curtain, (b) the presence of the coaming as a hazard, and (c) the lack of adequate handholds and warning signs in the bathroom.

In disposing of the first question the Court is of the opinion that from the evidence, photographic, blueprint and oral, that the shower curtain is of customary design and planned to hang long enough to be within the coaming and touch the floor to prevent water from splashing on the floor outside of the shower basin. It is believed that the length of the curtain is essential to its usefulness and that this very factor is a protection to the passenger in preventing water from splashing out on the bal-

ance of the bathroom floor that is not a part of the shower basin. The use of such a curtain is akin to the coaming placed around the shower in that it contributes to the safety of the bathroom and is a part of the seaworthiness of the ship.

"The law is that the owner owes a nondelegable duty to furnish a seaworthy vessel, and is liable where the injuries result from lack of original seaworthiness". Stewart v. United States, D. C., 25 F.2d 869, 870; Henson v. Fidelity & Columbia Trust Co., D. C., 3 F. Supp. 950; Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 381, 38 S.Ct. 501, 503, 62 L.Ed. 1171.

The fact that the curtain was drawn instead of being chained back when the fall occurred over three hours after the voyage had started cannot be imputed to the respondent even though custom might dictate that to be "shipshape" and offer the accommodation to the passenger in the neatest and safest manner, the curtain should be chained back. Several people had access to the bathroom and any one of them might have used the bathroom facilities and drawn the curtain.

The presence of the coaming as a hazard cannot be believed to be in violation of the care the carrier owes to the passengers but as in the case of the shower curtain is a part of the equipment to which the passenger is entitled for safety. If the coaming was not there and soapy water was allowed to flood the bathroom and cause a slippery, dangerous floor to be present for passenger use, the respondent would probably be guilty of negligence. Such was held to be true in the case of a seaman who fell in a slippery shower and the Court said:

"The question, then, is solely whether or not the shower was unseaworthy." Krey v. U. S., 2 Cir., 123 F.2d 1008, 1010.

The shower in this case is accused of being unseaworthy because of its coaming. The libel alleges that the maintenance of such a coaming in such a man-

ner was careless and negligent. It is 5¾ inches high and encircles the shower and as has been testified and is evident from the photographs is plainly visible and is just what one would expect to find in a bathroom at sea equipped with a shower. Libelant prides herself on her seamanship and testified that she is an "excellent sailor" and has made trips at sea for many years and is familiar with the fact that showers at sea are equipped with coamings.

In The Great Northern, 9 Cir., 251 F. 826, 830, a case quite similar to this one, the Court in reviewing the evidence said:

"The appellant was a man 47 years of age. He had been in the plumbing supply business, and had dealt in materials such as that of which the floor of the bathroom was constructed. He must have known, as every one who takes a bath knows, that such enameled ware is smooth, and when wet is slippery. He saw that the floor of the shower bath was wet. He had opportunity to observe, and must have seen, what handholds there were. The whole situation was visible to him, and there were no latent defects. He knew that a ship at sea was likely to lurch. He knew that stationary bathtubs were available for his use. He chose to use the shower bath, and he assumed whatever risk its obvious condition subjected him to."

The libelant, Mrs. Gardner, in using the toilet must of necessity have come into the room facing the shower, turned about, sat upon the seat of the toilet, and moved her feet about within inches of the coaming in executing these movements. She then rose, turned about and carefully placed her right foot between the toilet and the coaming. She has "20-20 vision" and had every opportunity to view the coaming that even according to the testimony of her own expert, Captain William C. Ash, is a "necessary and proper installation."

The Court cannot agree that the coaming installed and maintained by the respondent is done so in either a careless

or negligent manner nor is it in violation of the high degree of care due passengers from common carriers, but it is believed to be a necessary and integral part in completing the seaworthiness of the vessel.

The last point that must be decided is libelant's contention that the bathroom was maintained without an adequate distribution of hand grips for the purpose of manual support against disequilibration due to the movements of the ship.

The libelant introduced Captain Ash, a man of a number of years' experience at sea, who stated that the bathroom "is unsafe" but he also in further testimony agrees that "no installation is foolproof or accident proof" and that the bathroom is a "standard adequate bathroom."

█ "Owners of the vessels carrying passengers are not insurers of the lives of their passengers, nor even of their safety." The City of Panama, 101 U.S. 453, 25 L.Ed. 1061; Robinson on Admiralty, Ch. 11, Sec. 78.

█ Robinson further states:

"In the Oregon the matter was discussed at length and the cases stated. It was held in that case that the warranty of seaworthiness whereby the 'shipowner undertakes responsibility for any defects in the ship or her equipment' is a warranty to a shipper of goods only. It does not run to a passenger. The carrier of passengers, either by land or sea, does not assume this warranty. But instead of this warranty he is held to a very high degree of care, prudence and foresight. We may dismiss the question of whether or not the vessel was technically seaworthy and confine our inquiry to whether the officers and agents were guilty of negligence."

There is a certain measure of peril in any method of travel, in fact in almost any human undertaking. Using the toilet facilities at home may result in injury and we are constantly in some danger.

"The mere fact that the conditions presented a measure of peril does not, however, necessarily import negligence. There is always some possibility of accident in any structure. A common carrier is to be held to a high degree of care, but is not an insurer. If a form of structure is unavoidable or reasonably necessary, its maintenance does not constitute negligence, though attended with a measure of danger." Kitsap County Transp. Co. v. Harvey, 9 Cir., 15 F.2d 166, 167, 48 A.L.R. 1420.

The respondent introduced two highly skilled expert witnesses. Edwin C. Holden, Jr., Vice President of the U. S. Protection and Indemnity Agency, stated that he was the organizer of the safety department of this corporation that serves over 1000 ships and he testified that the bathroom in question is adequately equipped with safety aids and hand grabs and that it meets all safety requirements known to the witness.

Holden is supported by Bernard Tichaz, naval architect of 20 years in ship design and construction, who enumerated the hand grabs available to the libelant as (1) "toilet paper holder which is of massive construction", (2) flushing line in left-hand corner, "its diameter fits approximately a man's or woman's hand", (3) the structural stiffener projecting from the bulkhead for about "5 or 5½ inches", and (4) the hand grab in the shower stall. In addition to these devices it was developed that the water carafe and its holder were on the wall within reach and that the toilet seat and toilet bowl could be utilized as steadying implements if desired.

The libelant does not claim to have attempted to grab any of these in anticipation of a possible lurch. She stated, "I am an excellent sailor. There was no rough sea, nothing appeared to require grasping, and nothing there to grasp." She not only did not attempt to grasp anything but cannot recall the location of her left hand and arm. She said that the sea was "absolutely calm" and the ship's log is corroborative and shows no record of any unusual "lurch" at or near the time of the accident. The question that poses itself to the Court, therefore,

is what could have made the bathroom safe for her. Would the installation of another hand grab at the toilet seat eliminate the danger of a fall under the circumstances? The Court does not think so but is inclined to agree with the finding in The Great Northern, 9 Cir., 251 F. 826, 828.

"The court found that there was sufficient equipment to prevent slipping or falling, that the appellant might have grasped the curtain over the entrance, or the rod from which it hung, or the outer edge of the wall at the entrance, or the handle on the rear wall, which could be reached from the outside * * *"

The dimensions of the bathroom are such that a person the size of the libelant could prevent herself from falling in any direction other than the one in which she fell by merely placing her hands on the walls.

The Court cannot avoid the conclusion that the bathroom is perfectly adequate and safe and that there is no evidence of negligence on the part of the respondent.

The proctors for the respondent are hereby directed to prepare a judgment for the respondent in accordance with these findings with costs to be borne by the libelant.