836 F.2d 549
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ilse ABELES, Plaintiff-Appellant,
v.
HOUSE OF INTERNATIONAL BEAUTY, INC., Defendant-Appellee.
 No. 87-5003.
 United States Court of Appeals, Sixth Circuit.
 Dec. 31, 1987.
 
 Before LIVELY, Chief Judge, CORNELIA G. KENNEDY, Circuit Judge, and JOHN W. PECK, Senior Circuit Judge.
 LIVELY, Chief Judge.
 
 
 1
 The plaintiff in this personal injury action appeals from the judgment of the district court entered on a directed verdict. Jurisdiction of the district court was based on diversity of citizenship, and the law of Tennessee controls. The appeal was submitted on the briefs of the parties and the district court record, oral argument having been waived.
 
 I.
 
 2
 The plaintiff was seventy-six years old when she suffered a broken hip in a fall at the defendant's beauty parlor. Plaintiff's daughter-in-law had taken her to defendant's establishment for hair styling and a manicure. When it was time for the manicure, the manicurist escorted plaintiff to the newly remodeled section of the salon where the manicure station was located in a small room on a raised platform. There was a short step up to the platform area from a corridor. This step was four or five inches high and there was no handrail. However, a light was built into the riser of the step and there were three small warning signs cautioning of the step. The testimony indicated that there was little, if any, contrast between the colors of the carpeting in the corridor leading to the manicure area and that in the area itself. There were lights in the corridor and the manicure area.
 
 
 3
 Plaintiff fell as she was leaving the manicure area. There was testimony from the owner of the salon and the manicurist which indicated that plaintiff might have fallen while still on the platform before reaching the step. However, because plaintiff landed in the corridor below the manicure platform, the jury could have inferred that the step caused her fall. The testimony of plaintiff's daughter-in-law placed plaintiff on the platform at the step immediately before she fell. An architect who testified as a expert witness, stated that in examining the area he found that the step was four and one half inches high and that there was little color contrast between the two floor coverings. He also testified that when he was in the shop there was a glare from outside light coming through a window which reduced the detail and ability to perceive detail in the manicure area. This witness stated that the use of the step in a place that has a substantial senior citizen clientele was unreasonably dangerous, although he found no code violations.
 
 
 4
 The plaintiff did not testify. The manicurist stated that she had warned plaintiff to watch her step as she approached the step going to the manicure area and that she had held plaintiff's arm and assisted her up the step. This witness also testified that she told plaintiff after the manicure to wait a short time and she would help her again. The manicurist then turned to reach for plaintiff's purse and when she turned back in the direction of the step, plaintiff had fallen. Plaintiff's daughter-in-law stated that she did not see plaintiff fall because she had turned around at that time to help her son with his coat. When she turned back around she saw plaintiff lying below the step on her back. She too had told plaintiff she would help her, and had seen plaintiff at the step when she turned to help her son. The owner of the shop testified that as plaintiff began walking away from the manicurist's table she lost her balance and fell while still on the platform. He said she began to fall when she was eight to ten feet away from the step and hit the floor about two feet before she reached the step.
 
 
 5
 The district court noted the evidence that the step-down was not designed in accordance with good architectural practice and that the architect considered it unreasonably dangerous to elderly people because its presence could not be readily discerned. The court concluded, however, that this condition, if negligent, did not cause or contribute to plaintiff's accident. The court emphasized the fact that plaintiff did have knowledge of the existence of the stair, having just stepped up to the platform some thirty to thirty-five minutes before and having been warned of it by the defendant's employee. Considering the stair a dangerous defect, the court concluded that plaintiff had equal or superior knowledge to that of the owner of the premises becaUse she had just traversed the stair and had been warned of its presence. On this basis the district court found that the jury could only speculate that the proximate cause of plaintiff's injuries was the negligent design and construction of the step and that it would be error to submit the case to the jury. The district court also found plaintiff guilty of proximate contributory negligence for failing to note the dangerous condition created by the step even though she had negotiated it successfully a short time before she fell.
 
 II.
 A.
 
 6
 Our standard of review of a directed verdict in a diversity case from Tennessee was recently stated as follows:
 
 
 7
 [A] trial court presented with a motion for a directed verdict must
 
 
 8
 take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be draw from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion.
 
 
 9
 Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn.1977). See also Sauls v. Evans, 635 S.W.2d 377, 379 (Tenn.1982): Crosslin v. Alsup, 594 S.W.2d 379, 380 (Tenn.1980). In both the Tennessee and federal court systems, an appellate court reviewing a trial court's action on a directed verdict motion applies the same standard as used in the trial court. See Holmes, 551 S.W.2d at 685; Gootee, 712 F.2d at 1062.
 
 
 10
 Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248-49 (6th Cir.1984).
 
 
 11
 The Tennessee Supreme Court has described the duty of a trial court presented with a motion for a directed verdict thus:
 
 
 12
 In the jury case, he must consider the evidence most favorably for the plaintiff, allow all reasonable inferences in plaintiff's favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for plaintiff, he must deny the motion.
 
 
 13
 City of Columbia v. C.F.W. Construction Co., 557 S.W.2d 734, 740 (Tenn.1977) (emphasis added).
 
 
 14
 Speaking of both trial and appellate judges, the Tennessee Supreme Court stated:
 
 
 15
 The rule which dictates our decision requires that trial judges and appellate courts take the strongest legitimate view of the evidence in favor of the plaintiff, allow all reasonable inferences to be drawn therefrom in his favor, discard all couanterveiling evidence and deny the motion if there is any doubt as to the conclusions to be drawn from the whole evidence; a verdict should be directed only if reasonable minds could draw but one conclusion.
 
 
 16
 Saul v. Evans, 635 S.W.2d 377, 379 (Tenn.1982) (citations omitted).
 
 B.
 
 17
 Applying this standard, as variously stated, it is clear to us that a verdict should not have been directed for the defendant in this case. There was an abundance of evidence, particularly from the expert witness, that the defendant was negligent in several respects relating to the step up to the manicure room. Further, the jury could have found that the step caused the plaintiff's fall, relying on evidence we have previously outlines. There was material evidence to support a verdict for the plaintiff and we cannot agree that reasonable minds could draw only one conclusion from the evidence.
 
 
 18
 The fact that the plaintiff had negotiated the step successfully about a half an hour earlier does not call for a different result. In City Specialty Stores, Inc. v. Bonner, 252 F.2d 501, 504 (6th Cir.1958), a diversity case from Tennessee, this court discussed a similar argument by a defendant sued by a customer who had an earlier opportunity to observe the slippery condition of the floor in the defendant's store:
 
 
 19
 Mere knowledge of the physical characteristics of a situation is not the only factor to be considered. The character of action or inaction in relation to the appreciation of the peril which a person of ordinary prudence could be expected to have in the situation is also a factor to be considered. The attention which one must pay to his surroundings, in governing his actions with respect to them, is not a legal absolute and will vary with the type of the situation and its circumstances. Reasonable minds might fairly differ in their conclusions. Surface v. Safeway Stores, Inc., 8 Cir., 169 F.2d 937, 940; W.T. Grant Co. v. Karren, 10 Cir., 190 F.2d 710, 711; Kitsap County Transp. Co. v. Harvey, 9 Cir., 15 F.2d 166, 48 A.L.R. 1420. We are of the opinion that the District Judge was not in error in submitting this question to the jury.
 
 
 20
 We conclude that plaintiff was not contributorily negligent as a matter of law. A directed verdict on this basis is subject to the same limitations as one based on the absence of primary negligence. The Court of Appeals of Tennessee made this clear in Hathaway v. Middle Tennessee Anesthesiology, 724 S.W.2d 355, 360 (Tenn.Ct.App.1986), stating:
 
 
 21
 Ordinarily, negligence and contributory negligence are issues of fazct for the jury or finder of fact, and can be decided as a question of law by the court only when the facts are established by evidence free from conflict and the inference from the facts is so certain that all reasonable men, in the exercise of free and impartial judgment, must agree upon it. Frady v. Smith, Tenn.1974, 519 S.W.2d 584; Senters v. Tull, Tenn.App.1982, 640 S.W.2d 579.
 
 
 22
 Whether any kind of behavior conforms to a legal standard of reasonable conduct is a mere fact question for the jury and not a question of law. Smith v. Sloan, 189 Tenn. 368, 225 S.W.2d 539, reh. den. 189 Tenn. 378, 227 S.W.2d 2 (1950).
 
 
 23
 The terms, ordinary care, reasonable prudence, and such like terms as applied to the conduct and affairs of men have a relative significance and cannot be arbitrarily defined. Such questions are for the jury under proper instructions from the court. Croson v. Marsh, 12 Tenn.App. 33 (1926).
 
 
 24
 What a person of reasonable prudence would have done under the same or similar circumstances must be determined by the jury from their knowledge of mankind, and of how persons of reasonable prudence deport themselves in relation to their surroundings. Power Packing Co. v. Borum, 8 Tenn.App. 162 (1928).
 
 
 25
 The judgment of the district court is reversed and the case is remanded for a new trial.